SCOTT, TRUSTEE, *v.* BANK ONE TRUST COMPANY, N.A., ET AL.

[Cite as *Scott v. Bank One Trust Co., N.A.* (1991), 62 Ohio St.3d 39.]

(No. 89–1655—Submitted February 12, 1991—Decided October 9, 1991.)

40

*Schwartz, Kelm, Warren & Rubenstein* and *Daniel R. Swetnam,* for petitioner Bank One Trust Company, N.A.

*Luper, Wolinetz, Sheriff & Neidenthal* and *David M. Whittaker,* for petitioner John S. McCombe.

*Thompson, Hine & Flory* and *Susan L. Rhiel,* for respondent.

*Dinsmore & Shohl, Wiley Dinsmore, Mark L. Silbersack, Timothy A. Tepe* and *Albert L. Bell,* urging validity of the trust for *amicus curiae,* Ohio State Bar Association.

*Jeffrey D. Quayle,* urging validity of the trust for *amicus curiae,* Ohio Bankers Association Trust Division.

———————

*Per Curiam.* The federal district court has certified the following questions to this court:

"1. Is Rule XVI of the Ohio Supreme Court Rules of Procedure [providing for federal certification of state-law questions] constitutional under [A]rticle IV, [S]ection 5 of the Ohio Constitution?

"2. Whether spendthrift trusts are valid and enforceable under Ohio law. Specifically, is the spendthrift clause contained in the Brewer Trust enforceable under Ohio law?"

Scott contends that both questions should be answered "no." Bank One contends that they should be answered "yes."

I

This case comes here pursuant to Section 1, Rule XVI of the Supreme Court Rules of Practice: "The Supreme Court may, at its discretion, answer questions of law certified to it by the Supreme Court of the United States, a Court of Appeals of the United States, or a United States District Court. * * *" The first certified question in this case is whether Rule XVI itself is consistent with the Ohio Constitution.

In addressing this question, the parties focus on whether we have jurisdiction under Section 2, Article IV of the Constitution to answer certified questions. It is well settled, of course, that neither statute nor rule of court can expand our jurisdiction beyond the constitutional grant. *State, ex rel. Ellis, v. Bd. of Deputy State Supervisors* (1904), 70 Ohio St. 341, 348, 71 N.E. 717, 718; *Humphrys v. Putnam* (1961), 172 Ohio St. 456, 460, 17 O.O.2d 424, 426, 178 N.E.2d 506, 509; *State, ex rel. Cleveland Municipal Court, v. Cleveland City Council* (1973), 34 Ohio St.2d 120, 122, 63 O.O.2d 199, 200, 296 N.E.2d 544, 547; *State, ex rel. Coyne, v. Todia* (1989), 45 Ohio St.3d 232, 237, 543 N.E.2d 1271, 1276. If Rule XVI expanded our jurisdiction, we would have to declare it unconstitutional.

However, jurisdictional analysis is irrelevant to Rule XVI's constitutionality, for a court does not exercise jurisdiction by answering a certified question. "Jurisdiction" means "[t]he power to hear and determine a cause * * *." *Sheldon's Lessee v. Newton* (1854), 3 Ohio St. 494, 499. By answering a state-law question certified by a federal court, we may affect the outcome of the federal litigation, but the federal court still hears and decides the cause. Therefore, answering a certified question is not an exercise of jurisdiction.

Thus, we need no grant of jurisdiction in order to answer certified questions. Conversely, our jurisdiction under Section 2, Article IV cannot be the source of our power to answer such questions. If we have such power, we must seek it elsewhere.

In our view, such a power exists by virtue of Ohio's very existence as a state in our federal system. We begin with a truism: the Ohio Constitution permits the state to exercise its own sovereignty as far as the United States Constitution and laws permit. Since federal law recognizes Ohio's sovereignty by making Ohio law applicable in federal courts, the state has the power to exercise and the responsibility to protect that sovereignty. Therefore, if answering certified questions serves to further the state's interests and preserve the state's sovereignty, the appropriate branch of state government—this court—may constitutionally answer them.

The state's sovereignty is unquestionably implicated when federal courts construe state law. If the federal court errs, it applies law other than Ohio law, in derogation of the state's right to prescribe a "rule of decision." "By allocating rights and duties incorrectly, the federal court both does an injustice to one or more parties, and frustrates the state's policy that would have allocated the rights and duties differently. The frustration of the state's policy may have a more lasting effect, because other potential litigants are likely to behave as if the federal decision were the law of the state. In that way, the federal court has, at least temporarily, *made* state law of which the state would have disapproved, had its courts had the first opportunity to pass on the question." McCree, Foreword, 1976 Annual Survey of Michigan Law (1977), 23 Wayne L.Rev. 255, 257, fn. 10.

The danger is scarcely theoretical. Federal courts acknowledge that they frequently err in applying state law that is unclear or unsettled. See, *e.g.*, *United Services Life Ins. Co. v. Delaney* (C.A.5, 1964), 328 F.2d 483, 486–487, fn. 5–9 (collecting cases where state courts rejected federal interpretations of state law); *W.S. Ranch Co. v. Kaiser Steel Corp.* (C.A.10, 1967), 388 F.2d 257, 264–265, fn. 11–16 (Brown, J., concurring and dissenting) (collecting cases), reversed (1968), 391 U.S. 593, 88 S.Ct. 1753, 20 L.Ed.2d 835. Indeed, some federal judges consider state-law interpretation so hazardous that they com-

pare it to "prophecy." See *Nichols v. Eli Lilly & Co.* (C.A.10, 1974), 501 F.2d 392, 393; *Reid v. Volkswagen of America, Inc.* (C.A.6, 1975), 512 F.2d 1294 [1]; Brown, Certification—Federalism in Action (1977), 7 Cumberland L.Rev. 455. As United States Circuit Judge Alan Norris has remarked, certification frees federal courts from "having to *guess* how state courts will decide important questions of state law." (Emphasis *sic*.) Norris, The Bicentennial of Judicial Federalism (1990), 53 Ohio St.3d lvii, lviii.

Another federal judge has argued that it matters little if a federal court errs in applying state law, because if "state law is so unclear that a federal court, honestly trying to discover and apply it, falls into error * * * the relevant state policies are so lacking in development and firmness that their nonapplication in a diversity case is not of very great moment." Wright, The Federal Courts and the Nature and Quality of State Law (1967), 13 Wayne L.Rev. 317, 320.[2]

We respectfully disagree. Points of state law that seem unclear to federal courts may be quite clear to "[i]nformed local courts," which "may find meaning not discernible to the outsider." *Louisiana Power & Light Co. v. Thibodaux* (1959), 360 U.S. 25, 30, 79 S.Ct. 1070, 1073, 3 L.Ed.2d 1058, 1063. One cannot infer from a federal court's honest misunderstanding of state law that the policies served by that law lack development and firmness.

Moreover, we strongly believe in the importance of accurately applying Ohio law in federal courts. "In the tension between federal and state power lies the promise of liberty." *Gregory v. Ashcroft* (1991), 501 U.S. ——, ——, 111 S.Ct. 2395, 2400, 115 L.Ed.2d 410, 423. To the extent that a federal court applies different legal rules than the state court would have, the state's sovereignty is diminished; as Judge McCree put it, the federal court has made state law. From the state's viewpoint, losing part of its sovereignty is no small matter, especially since a federal court's error may perpetuate itself in state courts until the state's highest court corrects it. See *Nupnau v. Hink* (1964), 53 Ill.App.2d 81, 91, 203 N.E.2d 63, 68–69 (federal decision applying Illinois law entitled to deference in Illinois court), reversed (1965), 33 Ill.2d 285, 211 N.E.2d 379.

Certification ensures that federal courts will properly apply state law. Note, Inter-jurisdictional Certification: Beyond Abstention toward Coopera-

---

1. The *Reid* court's interpretation of Michigan law was later rejected by the Supreme Court of Michigan. See *Reid v. Volkswagen of America, Inc.* (C.A.6, 1978), 575 F.2d 1175 (on appeal from remand).

2. It should be noted that Judge Wright is not arguing against certification. But, cf., McCree, *supra*, at 257, fn. 10.

tive Legal Federalism (1963), 111 U.Pa.L.Rev. 344, 362. It thus strengthens the "federalist structure of joint sovereigns," *Gregory, supra,* 501 U.S. at ——, 111 S.Ct. at 2399, 115 L.Ed.2d at 422, and redeems "the promise of liberty," *id.,* contained in the federal and Ohio Constitutions. We cannot doubt our power to protect Ohio's sovereignty from inadvertent encroachments by federal courts. We therefore hold that Rule XVI is constitutional.

## II

Since we may constitutionally answer certified questions, we now consider the second certified question. The federal court has asked us whether spendthrift trusts are enforceable under Ohio law, and specifically whether the spendthrift clause in the Brewer Trust is enforceable.

## A

A "spendthrift trust" is a trust that imposes a restraint on the voluntary and involuntary transfer of the beneficiary's interest in the trust property. 1 Restatement of the Law 2d, Trusts (1959) 311, Section 152(2). Most states enforce such trusts, at least to some degree. See IIA Scott, Law of Trusts (Fratcher Ed.1987) 93–95, Section 152.1, fn. 2 and 3, and 138–140, Section 153, fn. 13. However, in *Sherrow v. Brookover* (1963), 174 Ohio St. 310, 22 O.O.2d 373, 189 N.E.2d 90, paragraphs three and four of the syllabus, we held that, absent legislative authorization, a restraint on the involuntary transfer of the beneficiary's continuing and enforceable rights in the trust property is invalid.

In a technical sense, it is arguable that the trust provision at issue here is not a true spendthrift provision. It does not expressly restrain the alienability of McCombe's interest in the trust property.[3] Instead, it provides that Bank One shall distribute the trust property outright to McCombe unless he is, *inter alia,* insolvent ("the insolvency clause"), has filed a petition in bankruptcy ("the bankruptcy clause"), or would not personally enjoy the property ("the nonenjoyment clause"). When any of these things occurs, the trust becomes a discretionary trust. Only when all the conditions cease to exist will McCombe again be entitled, under the terms of the trust, to outright distribution of the trust property.

However, Brewer intended this provision to accomplish the same goal as a spendthrift trust. The federal district court found that Brewer "wanted to

---

3. According to Bank One, the Brewer Trust contains, in addition to the provision at issue in this case, a provision that "no interest in the income or principal of the * * * Trust shall be alienated, encumbered, or otherwise disposed of by any beneficiary while in the possession and control of the Trustee * * *." This provision, while not at issue here, is a classic spendthrift provision, clearly inconsistent with *Sherrow, supra.*

leave her estate to John McCombe, but did not want to have her estate end up in the hands of John McCombe's creditors." While the trust provision at issue does not forbid the alienation of McCombe's interest in the trust property, it does in effect prevent such alienation.

If the trust is enforced according to its terms, attachment of McCombe's future interest would create what the federal bankruptcy court described as "an impasse or 'Catch 22' solution." *McCombe, supra,* 93 B.R. at 601. As Bank One concedes, McCombe's future interest in distribution is alienable. R.C. 2131.04; *Martin v. Martin* (1978), 54 Ohio St.2d 101, 112, 8 O.O.3d 106, 112, 374 N.E.2d 1384, 1391, quoting *Moore v. Foresman* (1962), 172 Ohio St. 559, 565, 18 O.O.2d 123, 126, 179 N.E.2d 349, 353. But the nonenjoyment clause precludes Bank One from distributing trust property outright unless McCombe will personally enjoy it. Therefore, if McCombe's future interest is transferred to the bankruptcy trustee, it can never become a present interest. Instead, McCombe would continue to be the beneficiary of a discretionary trust, the property of which his creditors cannot reach. Restatement of Trusts 2d, *supra,* at 311, Section 155(1); see *Bureau of Support v. Kreitzer* (1968), 16 Ohio St.2d 147, 150, 45 O.O.2d 480, 482, 243 N.E.2d 83, 85. This will be the result even after the bankruptcy proceedings are concluded, because their conclusion removes only two of the disabling conditions (those embodied in the bankruptcy and insolvency clauses) that have prevented McCombe from receiving the trust property outright. Thus, the nonenjoyment clause makes McCombe's future interest in the trust property worthless to anyone but McCombe.

Under such circumstances, it is unlikely that creditors would trouble to attach the future interest. "The object of the creditor is to get the property for himself, not merely to deprive the beneficiary of it." Bartelme, Spend-thrift Trusts (1894), 50 Albany L.J. 6, 10. Even if they did, McCombe would simply receive distributions at the discretion of a trustee selected by his mother.

Enforcement of the Brewer Trust as written would neatly circumvent *Sherrow* and allow McCombe to enjoy the property free of his creditors' claims. A rule so easily avoided would be no rule at all. We therefore agree with the federal court's characterization of the Brewer Trust as a spendthrift trust. We must either apply *Sherrow* or overrule it. So we turn to the question raised by *amici:* Should *Sherrow* be overruled?

## B

First, we briefly examine whether we should reconsider precedent in the context of a certified question. "The certification procedure was not designed

so as to allow a party 'to seek to persuade the state court to change what appears to be present law.'" *Venezia v. Miller Brewing Co.* (C.A.1, 1980), 626 F.2d 188, 192, fn. 5, quoting *Cantwell v. Univ. of Massachusetts* (C.A.1, 1977), 551 F.2d 879, 880. Thus, federal courts will not certify a question to which the answer is in no real doubt.

However, once a federal court does certify a question to us, we must "determine the present law bearing on the issue certified." *Morningstar v. Black & Decker Mfg. Co.* (1979), 162 W.Va. 857, 862, 253 S.E.2d 666, 669. The purpose of certification is to apply the same rules of state law to litigants in federal court as would apply in state court. If *Sherrow* deserves to be overruled, it would be unjust to apply it here simply because this case arose in federal court.

## C

That said, we consider the merits of *Sherrow*. In evaluating *Sherrow*'s viability, we recognize that "the principle of *stare decisis* is necessary to an orderly and predictable system of law * * *." *Shearer v. Shearer* (1985), 18 Ohio St.3d 94, 95, 18 OBR 129, 130, 480 N.E.2d 388, 390. However, we are also mindful "that our adherence to former decisions [must] not be arbitrary, but founded in their continuing reason and logic." *Hall v. Rosen* (1977), 50 Ohio St.2d 135, 138, 4 O.O.3d 336, 338, 363 N.E.2d 725, 727, overruled on other grounds, *Johnson v. Adams* (1985), 18 Ohio St.3d 48, 18 OBR 83, 479 N.E.2d 866. "It is * * * the proper province of this court to correct judicially created doctrines if they are no longer grounded in good morals and sound law." *Albritton v. Neighborhood Centers Assn. for Child Development* (1984), 12 Ohio St.3d 210, 214, 12 OBR 295, 299, 466 N.E.2d 867, 871.

*Amici* raise several arguments in favor of overruling *Sherrow* and allowing spendthrift trusts. Most persuasively, they argue that a property owner should have the right to dispose of her property as she chooses. That is why most courts, including Ohio courts before *Sherrow*, have enforced spendthrift trusts. See, *e.g., Nichols v. Eaton* (1875), 91 U.S. 716, 727, 23 L.Ed. 254, 257; *Skillman v. Symmes* (1896), 14 Ohio C.C. 547, 7 Ohio C.D. 39; *Frazier v. Wilkinson* (1899), 18 Ohio C.C. 363, 10 Ohio C.D. 106; *Matthews v. Curtis* (1926), 20 Ohio App. 209, 151 N.E. 778; *McWilliams v. McWilliams* (C.P.1956), 2 O.O.2d 77, 78, 140 N.E.2d 80, 82–83. See, also, *Payer v. Orgill* (C.P.1963), 91 Ohio Law Abs. 106, 109, 191 N.E.2d 373, 376.

On the other hand, an owner's rights over her property are not absolute. We endorsed that notion in *Sherrow;* we do not shrink from it today. As Dean Griswold rightly says: "The validity of spendthrift trusts is a matter of

policy, not of logic." Griswold, Spendthrift Trusts (2 Ed.1947) 634, Section 554.

However, as a matter of policy, it is desirable for property owners to have, within reasonable bounds, the freedom to do as they choose with their own property. That freedom is not absolute, as we recognized in *Sherrow*. But it is a policy consideration to be balanced against other policy considerations. In a society that values freedom as greatly as ours, this consideration is far from trivial.

The most important argument against spendthrift trusts is that they are unfair to the beneficiary's creditors because they allow the beneficiary to enjoy the trust property without paying his debts. "Creditors have a right to collect their judgment not only from the property that the debtor had at the time when they extended credit to him but also from any property which he may have, even if acquired thereafter." *Sherrow, supra*, 174 Ohio St. at 313, 22 O.O.2d at 375, 189 N.E.2d at 93. This argument fails both logically and as a matter of policy.

As a matter of logic, *Sherrow*'s reasoning begs the question. Of course, we agree that McCombe's creditors may collect from any property he has, including whatever interest he has in the trust property. But McCombe *has* no greater interest in the trust property than the trust agreement gives him. And McCombe's interest in the trust property is contingent on his personal enjoyment of it. If his interest in the trust property passes to his creditors, he will not personally enjoy it; if he will not personally enjoy it, then he has no interest in it to transfer to his creditors.

More important, *Sherrow*'s reasoning fails as a matter of policy. Suppose that Brewer had said to McCombe: "I will give you this property when you are out of debt, but not before." No one would suggest that McCombe's creditors, having somehow learned of Brewer's intent to give her property to McCombe, could take the property from Brewer. Brewer had no obligation to satisfy McCombe's debts with her own property. See *Beals v. Croughwell* (1941), 140 Neb. 320, 326–327, 299 N.W. 638, 641, 138 A.L.R. 1330, 1334. Or suppose that, after the bankruptcy proceedings were concluded, McCombe received a gift from Brewer. No one would suggest that the bankruptcy trustee could attach it. Yet, in these hypotheticals, McCombe's creditors are no worse off than they would be if the Brewer Trust is enforced. The results are identical: McCombe enjoys Brewer's property and the creditors get no share of it. These hypotheticals show that enforcing a spendthrift provision "takes nothing from the prior or subsequent creditors of the beneficiary to which they previously had the right to look for payment * * *." *Huestis v. Manley* (1939), 110 Vt. 413, 419, 8 A.2d 644, 646.

Some have suggested that spendthrift trusts, like other restraints on alienation, are economically inefficient. See, *e.g.*, Note, Spendthrift and Other Protective Trusts in Ohio (1964), 33 U.Cin.L.Rev. 281, 284 (hereinafter "Ohio Spendthrift Trusts"). However, the overwhelming majority of states recognize such trusts, and we know of no evidence that spendthrift trusts have harmed those states' economies. See Griswold, *supra,* at 635–637, Section 554; Scott, *supra,* at 91, Section 152.[4]

The *Sherrow* court also appealed to legislative supremacy to support its decision. The court noted that only the General Assembly may exempt property from creditors' claims. "It is elementary that, as to property or rights that are subject to execution, any claim by an individual owner thereof for exemption of part or all of such property or rights from claims of his creditors must be based upon constitutional or statutory provisions providing for such exemption." *Sherrow, supra,* 174 Ohio St. at 315, 22 O.O.2d at 376, 189 N.E.2d at 93–94.

We certainly cannot dispute the general proposition that "an individual [property] owner" may claim only such exemptions as the Revised Code allows him. See R.C. 2329.66(A). But we think the *Sherrow* court drew the wrong conclusion from that proposition. Again, *Sherrow*'s essential fallacy was to beg the question of what the "individual [property] owner" actually *owns* as the beneficiary of a spendthrift trust. The beneficiary owns no greater interest in the trust property than the settlor has given him. In the case of a spendthrift trust, the settlor has not given the beneficiary an alienable interest. Enforcing the trust does not, then, exempt the beneficiary's property from creditors' claims.

The *Sherrow* court also cited, without elaboration, R.C. Chapter 2333. *Sherrow, supra,* at 315, 22 O.O.2d at 376, 189 N.E.2d at 93. R.C. 2333.01, the "creditor's bill" statute, makes various equitable interests of a judgment debtor subject to the payment of the judgment.[5] Some have argued that this

---

4. Indeed, an early commentator argued that the economy benefits when property owners are allowed to set up spendthrift trusts. "In America wealth is not as often acquired by inheritance as by the ingenuity, hard work, or personal ability of the owner, and usually the greatest incentive to its accumulation is the fact that its possession will afford comforts and opportunities to his children." Bartelme, *supra,* at 10. This contention is surely as plausible as the contention that spendthrift trusts damage the economy.

5. R.C. 2333.01 provides:

"When a judgment debtor does not have sufficient personal or real property subject to levy on execution to satisfy the judgment, any equitable interest which he has in real estate as mortgagor, mortgagee, or otherwise, or any interest he has in a banking, turnpike, bridge, or other joint-stock company, or in a money contract, claim, or chose in action, due or to become due to him, or in a judgment or order, or money, goods, or effects which he has in the

statute actually forbids the enforcement of a spendthrift trust. See Ohio Spendthrift Trusts, *supra*, 33 U.Cin.L.Rev. at 293. Accord Griswold, *supra*, at 251, Section 213 (citing R.C. 2333.01's virtually identical predecessor statute, former G.C. 11760).

But this argument suffers from the same infirmity noted above. It is true that a judgment debtor's equitable interests are liable to execution of the judgment. But the statute speaks only of those interests "which * * * [the judgment debtor] *has* * * *." (Emphasis added.) And the beneficiary of a spendthrift trust has no interest that can be executed upon, because the trustor did not give him such an interest. The General Assembly undoubtedly could have outlawed spendthrift trusts, but it has not. Since the General Assembly has not spoken, we must, as the *Sherrow* court did, make our best effort to balance the competing policies favoring and disfavoring spendthrift trusts.

We are no longer satisfied with the balance struck twenty-eight years ago. The policy reasons against spendthrift trusts, which seemed so strong then, now look weak. The *Sherrow* court too easily dismissed the countervailing policy that the law should allow the property owner, within reason, to dispose of her property as she chooses. We can no longer sustain the *Sherrow* doctrine.

Accordingly, we overrule *Sherrow* and hold that spendthrift trusts will be enforced in Ohio. Our answer to the second certified question, therefore, is that the spendthrift clause contained in the Brewer Trust is enforceable under Ohio law.

*Decision accordingly.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT and RESNICK, JJ., concur.

H. BROWN, J., not participating.

---

possession of any person or body politic or corporate, shall be subject to the payment of the judgment by action."