In re Douglas MATHENEY, Debtor.

Larry J. McCLATCHEY,
Trustee, Plaintiff,

v.

OHIO PUBLIC EMPLOYEES DEFERRED COMPENSATION PROGRAM, Defendant.

Bankruptcy No. 2–89–06704.
Adv. No. 2–91–0421.

United States Bankruptcy Court,
S.D. Ohio, E.D.

March 24, 1992.

Larry J. McClatchey, Emens, Hurd, Kegler & Ritter, Columbus, Ohio, for trustee, plaintiff.

Christopher B. McNeil, Asst. Atty. Gen., Columbus, Ohio, for Ohio Public Employees Deferred Compensation Program.

Charles M. Caldwell, Columbus, Ohio, Asst. U.S. Trustee.

## ORDER ON MOTION FOR DETERMINATION OF NON–CORE STATUS AND GRANTING MOTION FOR SUMMARY JUDGMENT

R. GUY COLE, Jr., Bankruptcy Judge.

### I. *Preliminary Matters*

This matter is before the Court upon a motion for determination of non-core status ("Motion for Determination") filed by the Ohio Public Employees Deferred Compensation Program, the defendant in the instant adversary proceeding. Larry J. McClatchey ("trustee"), the trustee in the underlying Chapter 7 case and the plaintiff in this proceeding, filed a response in opposition to the Motion for Determination and, in conjunction with that, a motion for summary judgment. The defendant filed a response to the motion for summary judgment and a reply to the trustee's response in opposition to the Motion for Determination; the trustee also has replied to the defendant's opposition to the motion for summary judgment.

### II. *Findings of Fact*

1. Douglas Matheney filed a petition under Chapter 7 of the Bankruptcy Code on November 28, 1989. Listed in the schedules accompanying the petition is the debtor's interest in a "public employees deferred compensation [program]" (hereinafter, the "Program"). The interest is valued at $3,690.88. The debtor claimed this interest as exempt pursuant to Ohio Revised Code ("O.R.C.") §§ 2329.66(A)(10)(a) and 2329.66(A)(10)(c). The trustee objected to this claim of exemption; as no response to the objection was filed, it was sustained by order entered April 23, 1990.

2. On November 18, 1991, the trustee filed the instant complaint, seeking turnover of the debtor's interest in the Program. The trustee alleges, in paragraph 4 of the complaint, that the debtor has a property interest in "funds administered by and in possession of the [defendant] to the extent of $3,720.04, according to the account statement." The defendant admits that the document attached to the complaint is a participant statement of the debtor's account, but denies the other allegations in paragraph 4. The trustee further alleges, and the defendant admits, that on October 18, 1990, the trustee filed and served upon the defendant a motion for turnover of property of the estate. The defendant did not respond to this motion.

3. The Program was established and is operated in accordance with O.R.C. §§ 145.-71–145.74 and 26 U.S.C. § 457, and the regulations promulgated thereunder, as a non-qualified, unfunded, deferred compensation plan for State of Ohio employees. The Program allows eligible State employees to elect to participate in the State's Deferred Compensation Plan by executing a Participation Agreement which directs that the State defer payment of a specified amount of the employee's compensation. The State then establishes an account in the employee's name with respect to the deferred funds. The deferred funds are not subject to Federal or State taxation until the employee-participant receives a distribution of funds from the Program.

4. A participant may obtain his deferred funds from the Program under the following conditions: (1) when he reaches the age of 70½; (2) is separated from service with the employer; or (3) when faced with an unforeseeable emergency. An unforeseeable emergency is defined as:

severe financial hardship resulting from a sudden and unexpected illness or accident of a participant or of a dependent (as defined in § 152(a) of the Code) of the participant, loss of the participant's property due to casualty, or other similar extraordinary and unforeseeable circumstances arising out of events beyond the control of the participant which hardship cannot be relieved by reimbursement or compensation (by insurance or otherwise), liquidation of the participant's assets (to the extent that liquidation would not itself cause severe financial hardship), or cessation of deferrals under the plan.

Deferred Compensation Plan, para. 1.24. Upon application by a participant, the plan administrator is to make the decision as to whether an unforeseeable emergency exists; such a decision shall be final and conclusive. *Id.*

5. The debtor is, and has been, an "eligible employee" and a "participating employee" in the Program; as such, on the date the petition was filed, the State had deferred the sum of $3,720.04 of what would otherwise have been paid to the debtor as current compensation. At the time of the filing of the bankruptcy petition, the debtor was not separated from public service and had not attained age 70½. The debtor has never requested of the plan administrator a determination of the existence of an unforeseeable emergency.

6. The defendant denies that the instant proceeding is core and that the Court has jurisdiction over these proceedings. Answer, para. 2.

### III. *Conclusions of Law*

#### A. Jurisdiction of the Bankruptcy Court

■ 28 U.S.C. § 1334 governs the existence of jurisdiction in bankruptcy courts:

(a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.

(b) Notwithstanding any act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.

Section 1334 establishes four types of matters over which the district court has jurisdiction: (1) "cases under title 11," (2) "proceedings arising under title 11," (3) pro-

ceedings "arising in" a case under title 11, and (4) proceedings "related to" a case under title 11. The first category describes the underlying bankruptcy case upon which all subsequent proceedings rest. *Michigan Employment Sec. Comm'n. v. Wolverine Radio Co., Inc. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1141 (6th Cir.1991) (citing *Robinson v. Michigan Consol. Gas Co.*, 918 F.2d 579, 583 (6th Cir.1990); *Wood v. Wood (Matter of Wood)*, 825 F.2d 90, 92 (5th Cir.1987)).

It is not necessary to distinguish between the second, third, and fourth categories of jurisdiction, all of which are subsumed under § 1334(b). These categories (proceedings "arising under," "arising in," and "related to" a case under title 11) operate together to define the scope of bankruptcy jurisdiction. *Wolverine Radio*, 930 F.2d at 1141 (citing *Wood*, 825 F.2d at 93). A determination of § 1334(b) jurisdiction hinges on whether a matter is at least "related to" the bankruptcy. *Wolverine Radio*, 930 F.2d at 1141.

An increasingly expansive definition of a related proceeding under § 1334(b) has been adopted by a number of the circuit courts. *Id.; Robinson*, 918 F.2d at 583. *See also Hughes–Bechtol, Inc. v. Ohio (In re Hughes–Bechtol, Inc.)*, 124 B.R. 1007, 1015 (Bankr.S.D.Ohio 1991).

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether *the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy.* Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*Wolverine Radio*, 930 F.2d at 1142 (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984) (citations omitted)); *Robinson*, 918 F.2d at 584 (quoting *In re Salem Mortgage Co.*, 783 F.2d 626, 634 (6th Cir.1986)). This doctrine also has been adopted by the Fourth Circuit, *A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.)*, 788 F.2d 994, 1002 n. 11 (4th Cir.1985), *cert. denied*, 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986); the Fifth Circuit, *Wood*, 825 F.2d at 93; the Eighth Circuit, *Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.)*, 810 F.2d 782, 786 (8th Cir.1987); and the Ninth Circuit, *Fietz v. Great Western Savings (In re Fietz)*, 852 F.2d 455, 457 (9th Cir.1988).

Employing the foregoing analysis, the Court determines that it possesses jurisdiction over this proceeding. The outcome of this proceeding clearly could have an effect on the bankruptcy estate. Recovery by the trustee of the funds the debtor has deposited in the Program will provide additional monies for the bankruptcy estate and, hence, additional monies for distribution to creditors. The defendant's contention that the Court does not have jurisdiction over these proceedings is not well-taken.

### B. Determination of Core/Non–Core

The trustee contends that, as this action seeks turnover, it is a core proceeding under 28 U.S.C. § 157(b)(2)(E) and (O). The defendant disagrees. It argues that the proceeding is non-core because the action requires construction of the contract between the debtor and the Program and, thus, does not have any federal bankruptcy law as its basis; rather, state common law will control the proceedings.

#### 1. *Federal Bankruptcy Law Versus State Common Law*

Countless decisions, including several of this Court, have explored in depth the distinction between core and non-core proceedings. The Supreme Court's decision in *Northern Pipeline Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), and the subsequent enactment of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("BAFJA"), spawned this analysis. BAFJA's restructuring of bankruptcy jurisdiction, making the bankruptcy court a unit of the

district court, renders the effect of the label "core" or "non-core" significant.

Under the current statute, absent consent of the parties, only district judges, may enter final orders in proceedings merely related to cases under title 11 ("non-core proceedings"). 28 U.S.C. § 157(c). Bankruptcy judges, however, retain power to hear and determine all cases under Title 11 and to enter final orders in proceedings arising in a case under Title 11 or arising under Title 11 ("core proceedings").

*Staats v. Adolfson & Peterson, Inc. (In re Statewide Pools, Inc.),* 126 B.R. 877, 880 (Bankr.S.D.Ohio 1991) (quoting *Sonnyco Coal, Inc. v. Bartley (In re Sonnyco Coal),* 89 B.R. 658, 663 (Bankr.S.D.Ohio 1988), *rev'd in part,* 131 B.R. 799 (S.D.Ohio 1990)).

Section 157(b)(2)(A)–(O) of title 28, part of BAFJA, provides a nonexclusive list of examples of core proceedings:

(2) Core proceedings include, but are not limited to—

(A) matters concerning the administration of the estate;

(B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;

(C) counterclaims by the estate against persons filing claims against the estate;

(D) orders in respect to obtaining credit;

(E) orders to turn over property of the estate;

(F) proceedings to determine, avoid, or recover preferences;

(G) motions to terminate, annul, or modify the automatic stay;

(H) proceedings to determine, avoid, or recover fraudulent conveyances;

(I) determinations as to the dischargeability of particular debts;

(J) objections to discharges;

(K) determinations of the validity, extent, or priority of liens;

(L) confirmations of plans;

(M) orders approving the use or lease of property, including the use of cash collateral;

(N) orders approving the sale of property other than property resulting from claims brought by the estate against persons who have not filed claims against the estate; and

(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims.

As core proceedings are not limited to this list, a myriad of tests have been articulated to determine if a certain action is core. This Court previously has adopted the following standard, first employed by the Fifth Circuit:

If the proceeding does not invoke a substantive right created by the federal bankruptcy law and is one that could exist outside of bankruptcy it is not a core proceeding; it may be *related* to the bankruptcy because of its potential effect, but under section 157(c)(1) it is an 'otherwise related' or noncore proceeding.

*United Sec. & Communications, Inc. v. Rite Aid Corp. (In re United Sec. & Communications, Inc.),* 93 B.R. 945, 954–55 (quoting *Wood,* 825 F.2d at 97).

The Court rejects the Program's contention that the instant proceeding is non-core because the proceeding does not have federal bankruptcy law as its basis. Turnover clearly is a substantive right created by federal bankruptcy law. 11 U.S.C. § 542. Under § 542, a turnover action may be brought only by the trustee appointed in a bankruptcy case or by the debtor-in-possession; neither of these entities exist outside of bankruptcy. Hence, this action invokes a substantive right created by federal bankruptcy law and is a core proceeding.

The Court also disagrees with the Program's argument that state common law will control the proceedings. The only role state law will play is with respect to the applicable provisions of the Ohio Revised Code under which the Program is established and the Program's establishment is not at issue. Moreover, "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by state law." 28 U.S.C. § 157(b)(3).

### 2. Definition of an Action for Turnover

The characterization of the action as one for turnover is misleading argues the defendant, as the trustee's purpose is not the collection of a matured debt. The defendant asserts that the action is non-core because the trustee is not seeking property of the bankruptcy estate. According to the defendant, the funds at issue are not estate property as the debtor's interest has not matured, thus, he has no present right to the funds.

■■■ Under 28 U.S.C. § 157(b)(2)(E), an order to turn over property of the estate is a core proceeding. However, the mere characterization of an action as a complaint for turnover does not automatically mean that it is a turnover action as contemplated by 28 U.S.C. § 157(b)(2)(E). An action is properly characterized as one for turnover where the trustee or debtor in possession is seeking to obtain property *of* the debtor, as opposed to seeking property *owed to* the debtor. *John Hancock Mutual Life Insur. Co. v. Watson (In re Kincaid)*, 917 F.2d 1162, 1165 (9th Cir.1990).

Although the defendant apparently has not raised the core versus non-core issue previously, the defendant has attempted several times prior to today to avoid paying monies it holds on behalf of debtors under the Program to a trustee in bankruptcy. *See, e.g., Sicherman v. Ohio Public Employees Deferred Compensation Program (In re Leadbetter)*,[1] 946 F.2d 895 (6th Cir. 1991) (per curiam), *aff'g* 1:90 CV 0731

(N.D.Ohio, Nov. 30, 1990, amended Dec. 5, 1990), *aff'g* 111 B.R. 640 (Bankr.N.D.Ohio 1990); *Sicherman v. Copeland Companies (In re Martucci)*, 136 B.R. 153 (Bankr. N.D.Ohio 1992); *Scott v. Council (In re Council)*, 122 B.R. 64 (Bankr.S.D.Ohio 1990); *Luring v. Administrator, Ohio Public Employees Deferred Compensation Program (In re Petrey)*, 116 B.R. 95 (Bankr.S.D.Ohio 1990); *In re Hansen*, 111 B.R. 647 (Bankr.N.D.Ohio 1990); *Gilbert v. Osburn (In re Osburn)*, 56 B.R. 867 (Bankr.S.D.Ohio 1986). The question presented in these cases, all of which involved actions for turnover, was whether funds deposited by a debtor pursuant to the Program's Deferred Compensation Plan constitute property of the bankruptcy estate. Each of these courts found the funds as deposited to be property of the bankruptcy estate, except to the extent such funds may be exempt.

■■ Although the Court is in full agreement with the analysis set forth in *Council* and *Osburn*, decisions from this district, a recently decided Sixth Circuit case is dispositive of the issues in dispute. In that decision, the Sixth Circuit expressly adopted the reasoning employed by the bankruptcy court in *Leadbetter:* "For the reasons stated by the bankruptcy court in its opinion of March 1, 1990, and adopted by the district court in its opinion of November 30, 1990, as amended on December 5, 1990, we agree that the deferred funds are the property of the bankruptcy estate." The Court is thus bound by *Leadbetter*. *Leadbetter* determined that the deferred funds were estate property, as not only did the debtor have an interest in the Program, being an eligible government employee with over $3,500 credited to his account, but this interest also was determined to be accessible by the debtor. 111 B.R. at 641–42. This Court likewise finds that the debtor's interest in the Program constitutes property of the estate.

The Bankruptcy Court in *Leadbetter* next considered whether any provision of

---

**1.** *Leadbetter* actually is an unpublished disposition and appears only in tables at this Federal Reporter citation. However, a written opinion is available in the Westlaw database.

the Bankruptcy Code would exclude such interest from recovery by a trustee. The court noted that § 541(c)(2), which excludes from property of the estate certain beneficial interests of the debtor in a trust enforceable under applicable nonbankruptcy law, is inapplicable to deferred funds under the Program. In reviewing the Deferred Compensation Plan promulgated under the Program—the same plan as is at issue here—the court opined that "it is undisputed that the Plan is not a trust." 111 B.R. at 643. The State apparently does not, and has not in the past, contested this conclusion. Thus, this Court, as mandated by the Sixth Circuit's affirmance in *Leadbetter*, concludes that the Program, and its Deferred Compensation Plan, do not constitute a trust under § 541(c)(2).[2]

The funds held by the Program have been held by the Sixth Circuit to be property of the estate. *Leadbetter,* 946 F.2d 895. *See also Martucci,* 136 B.R. 153; *Council,* 122 B.R. 64; *Petrey,* 116 B.R. 95; *Hansen,* 111 B.R. 647. As such, this action is properly deemed to be one for turnover, and, pursuant to 28 U.S.C. § 157(b)(2)(E), is a core proceeding.

### C. Motion for Summary Judgment

#### 1. *Standards on Summary Judgment*

Summary judgment is appropriate where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed. R.Bankr.P. 7056. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986) (emphasis in original). There is no genuine issue of fact "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The party seeking summary judgment bears the initial burden of establishing that no genuine issue of material fact exists. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Smith v. Transworld Sys., Inc.,* 953 F.2d 1025, 1028 (6th Cir.1992). The nonmoving party, however, may not simply rest on its pleadings, but must present probative evidence in support of its claim. *Smith,* 953 F.2d at 1028 (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. at 2553; *60 Ivy St. Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir.1987)). Summary judgment is appropriate if the evidence in dispute is " 'merely colorable, or is not significantly probative.' " *Smith,* 953 F.2d at 1028 (quoting *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11).

#### 2. *Entitlement of Trustee to Turnover Under 11 U.S.C. § 542(a)*

■ The Complaint is brought pursuant to 11 U.S.C. § 542(a), which provides:

---

**2.** 11 U.S.C. § 541(c)(2) is of significance because of recent changes in the state of the law. Two decisions addressing the same issue as *Leadbetter* reach the same result, via a different route. *Council* and *Petrey* both found that § 541(c)(2) cannot exclude the debtor's interest in the Program funds from the bankruptcy estate, because Ohio does not recognize the validity of spendthrift trusts and not because, as *Leadbetter* found, the Program funds are not a trust at all. *Council,* 122 B.R. at 67; *Petrey,* 116 B.R. at 99. The significance of this distinction is important in light of a recent Ohio Supreme Court decision declaring spendthrift trusts to be enforceable under Ohio law. *Scott v. Bank One Trust Co., N.A.,* 62 Ohio St.3d 39, 577 N.E.2d 1077 (1991). Due to the Sixth Circuit's express adoption of the reasoning employed in *Leadbetter,* the Court must follow that decision. As the Plan does not constitute a trust, the *Scott* decision does not change the conclusion of *Leadbetter.*

The defendant argues that a recent Sixth Circuit decision, holding that the phrase "applicable non-bankruptcy law" in § 541(c)(2) does not refer exclusively to state spendthrift trust law, but includes all state and federal laws under which a transfer restriction is enforceable, effectively overrules *Leadbetter. Forbes v. Lucas (In re Lucas),* 924 F.2d 597, 600–01 (6th Cir. 1991). The Court rejects this argument. The Sixth Circuit affirmed the bankruptcy court decision in *Leadbetter* after the *Lucas* decision was published; obviously, then, the Sixth Circuit did not view *Lucas* as overruling *Leadbetter.*

Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property, unless such property is of inconsequential value or benefit to the estate.

To obtain turnover under § 542(a), the trustee must establish the following elements: (1) the possession, custody, or control of property by an entity; (2) the property must be property that the trustee can use in accordance with § 363; and (3) the property must have more than an inconsequential value or benefit to the estate. *Lucas v. Lucas (In re Lucas)*, 100 B.R. 969, 972 (Bankr.M.D.Tenn.1989), *rev'd on other grounds*, 924 F.2d 597 (6th Cir.1991), *cert. denied*, ⸺ U.S. ⸺, 111 S.Ct. 2275, 114 L.Ed.2d 726 (1991); *General Motors Acceptance Corp. v. Radden (In re Radden)*, 35 B.R. 821, 826 (Bankr.E.D.Va.1983).

The Ohio Public Employees Deferred Compensation Program is an entity. 11 U.S.C. § 101(15). The Program is in possession of property of the debtor's estate which the trustee may use under § 363 and this property will bring value to the estate. Thus, all the elements of § 542(a) have been established and the trustee is entitled to turnover of the funds the debtor has deposited with the Program.

The Court additionally determines that there are no genuine issues of material fact and that the trustee is entitled to judgment as a matter of law.[3] As such, the Court hereby orders turnover of any and all funds the Program holds in the debtor's name. An order sustaining the trustee's objection to the debtor's claim of exemption in the Program has been entered; therefore, the debtor's entitlement to an exemption in the funds is now a moot issue.

*IV. Conclusion*

Based upon the foregoing, the trustee's motion for summary judgment is GRANTED and the defendant's motion for determination of non-core status is DENIED.

IT IS SO ORDERED.

---

3. There is a difference in the amount the debtor has listed in his schedules as being deposited with the Program and the amount in the account statement attached to the complaint. The difference is not significant—the amounts are within $50 of each other. The Trustee is entitled to the entire amount, whatever that amount is.