OPINION
Sean Estepp appeals from the trial court's denial of his motion for shock probation. Estepp was convicted of child endangering on November 22, 1996. Estepp broke a two month child's leg in a fit of anger. He was sentenced to an indefinite term of 2-15 years in prison. His sentence was stayed pending his appeal. His conviction was affirmed by this court and Estepp began serving his sentence on April 16, 1998.
 On May 26, 1998, Estepp filed a motion for shock probation pursuant to R.C. 2947.061. The trial court overruled Estepp's motion on September 17, 1999 and this appeal followed.
While the motion for shock probation was pending, Estepp was held in the Montgomery Educational Pre-Release Center. Dr. Howard Kamen, a psychologist, testified he conducted a mental health screening of Estepp and found him to be normal. Dr. Kamen testified he conducts twelve week anger management classes at the Center, but Estepp was not enrolled as of August 1998, although a new class would begin in September 1998.
Daniel Geeding testified she was pregnant with Estepp's child and was scheduled to give birth within a few weeks of the August 1998 hearing. She said she had known Estepp for about three years and had no qualms about leaving her three year old child in Estepp's custody.
Estepp testified he was on a waiting list for the anger management class at the Pre-Release Center. He said he felt he did not lose his temper as much as he had before. He testified he had a job waiting for him should the court grant his shock probation motion.
James Nutter, a probation officer with the Montgomery County Adult Probation Department testified he completed the Shock Probation report. (State's Ex. 1). Nutter stated he interviewed Heather McIntosh, the mother of the victim, and she told him she was opposed to Estepp's receiving shock probation. Nutter stated he was opposed to the shock probation motion because the child endangerment offense was a serious offense and because Estepp had a prior juvenile record in 1991 for gross sexual imposition.
The trial court reviewed the report submitted by Dr. Susan Dyer, a clinical psychologist. Dr. Dyer stated she interviewed Estepp in November 1996 and she administered the MMPI. Dr. Dyer said Estepp presented a defensive profile with chronic and intense anger who is capable of aggressive acting out. Dr. Dyer stated that people with psychological profiles like Estepp's require an inordinate amount of attention and they have little insight into their own needs and behavior.
Dr. Dyer stated that Mr. Estepp denied responsibility for the offense. She opined in her initial report that Estepp was a poor candidate for community based treatment and supervision. Because of Estepp's lack of insight, Dr. Dyer stated she believed he would be poorly motivated for treatment.
Dr. Victor McCarley, a clinical psychologist, was hired by Mr. Estepp's family to examine him and provide a psychological assessment of Estepp for the court. The examination took place on June 15 and June 21, 1999. Dr. McCarley provided an extensive report of his examination to the trial court.
 Mr. Estepp appears to be of average intelligence, however, he has a history of underachievement. He doesn't have a thought disorder, but does reflect some rigidity and narrowness in his thinking. Although Mr. Estepp may situationally experience depression, guilt, or anxiousness, he does not exhibit any evidence of an emotional or mood disorder. Mr. Estepp has good understanding of community social and moral values, although he does not always adhere to such. He exhibits attributes reflective of a characterological disorder, and as such his disposition is not readily amenable to amelioration, at least not within a short time frame. Prevailing features of his personality are unstable and intense relationships, impulsive self-damaging acting, affective instability, and inappropriate, intense and uncontrolled anger with antisocial overtones. He also exhibits a lack of significant victim empathy. He tends to be self focused, with his concerns for other, including victims, most often being after the fact, and circumstantial. Thus, any guilt or remorse is secondary and situational, with a moderate-high probability that he will not significantly modify his disposition, and his thoughts/actions will be repetitive.
 Although Mr. Estepp is not an immediate danger to others, situationally his disposition and history reflects that potentiality. Mr. Estepp readily acknowledges that he continues to hold unresolved anger and resentment, and has aggressive tendencies, although such has diminished with time. Mr. Estepp also has not learned adequately from prior mistakes, and his overall disposition is not positive. However, Mr. Estepp's chronological age is a relative positive factor, with the probability that with increased emotional and chronological development these features of his personality will lessen even further. While Mr. Estepp's disposition strongly suggest that he will continue to have unstable and intense interpersonal relationship, and will be situationally aggressive, he is not considered an immediate imminent threat to others. This nonimminent dispositional threat was reasonably demonstrated by Mr. Estepp for a period of approximately 2 1/2 years (SEP `95-APR `98) while he was on unrestricted bond during the appeal of his case and the imposement of his sentence. Clearly, Mr. Estepp functions better when he has external controls placed on him, however, his needs may not be best served through further incarceration at this time.
 Mr. Estepp has already been incarcerated for approximately 14 months. This period of incarceration appears to have been adequately sufficient in enabling the Court to "shock" or get Mr. Estepp's attention. This time has also allowed Mr. Estepp the opportunity to contemplate his actions which precipitated his child endangerment conviction and other actions of an inappropriate or aggressive nature. It is believe [sic] that the Court can best serve Mr. Estepp, and the community, by granting his motion before the Court for shock probation with stipulations. Further incarceration will only serve for the most part to further penalize Mr. Estepp, but will not aid him in turning his life around, if that is in fact what he is going to do.
 Dr. McCarley recommended that if Estepp was granted shock probation, he be required to successfully complete a parenting training program with a special emphasis on anger management and alternative disciplinary strategies.
In denying the shock probation motion, the trial court stated Estepp "needs additional treatment programs in confinement before being released."
Estepp has assigned three assignments of error in this appeal. Preliminarily we note that we have held the denial of shock probation to be a final appealable order. State v. Brandon (1993), 86 Ohio App.3d 671. In his first assignment, Estepp argues that the trial court abused its discretion in denying him shock probation.
Specifically, Estepp argues the trial court abused its discretion because the evidence demonstrated anger counseling is time consuming and difficult to receive while incarcerated, and counseling could be made a condition of probation. Estepp argues that there is no credible evidence that he represents a present threat to himself or the community.
The State argues that there is no evidence the trial court acted in an arbitrary, irrational or unconscionable manner in denying the motion. The State argues that the evidence demonstrated that Estepp posed a threat to the community and a risk to his family until he receives counseling and treatment available in prison.
The State notes that the trial court was required to consider the factors listed in R.C. 2951.02(B) and (D) that mitigate for and against probation. The State argues that none of the statutory factors favor probation in this case. The State notes that Estepp caused serious physical harm to a small child, he has a prior history of delinquency, and he has admitted to domestic violence. The State also argues that since Estepp's probation for the gross sexual imposition was revoked, it is less likely he will respond affirmatively to probation or other court imposed treatment. R.C. 2951.01(B)(7).
The State also argues that the trial court properly found a factor listed at R.C. 2951.01(D)(2) against suspending Estepp's sentence, that he poses a substantial risk that while on probation, he will commit another offense. The State notes that both psychologists noted that Estepp continues to hold unresolved anger and resentment and is capable of acting out in aggressive ways. The State notes that both psychologists and Estepp agree he is in need of therapy to address his anger. The only disagreement is where that therapy might best be accomplished consistent with Estepp's rehabilitation and the public's need for protection.
The State notes that Estepp was free on bail for nearly two years but never sought therapy for his anger during that time period. There is no evidence that therapy is not available in Ohio's penal institutions. The trial court noted that if the defendant had difficulty getting into an appropriate institutional program the court would assist in resolving that difficulty. (Sentencing Tr. p. 4).
The appellant has failed to demonstrate that the trial court acted arbitrarily or capriciously in denying his shock probation motion. The first assignment of error is overruled.
In his second assignment, Estepp contends the trial court erred in permitting Probation Officer James Nutter to testify, over his objection, that the victim's mother was opposed to Estepp receiving shock probation.
Evid. R. 101(C) provides that the evidence rules do not apply to miscellaneous criminal proceedings such as sentencing hearings. In Statev. Cook (1998), 83 Ohio St.3d 404, the Ohio Supreme Court held that a sexual predator determination hearing is akin to a sentencing or probation hearing, and the Rules of Evidence do not strictly apply. InCook, the court held that a presentence report may be relied upon by the trial judge in making the predator determination. In this case, Probation Officer Nutter presented a Shock Probation Report to the trial court (State's Exhibit 1) which included a victim statement section similar to that found in a pre-sentence investigation report. Nutter stated in the report and in his testimony that he contacted the victim's mother, Heather McIntosh, and she opposed shock probation. This was the type of reliable hearsay properly admissible at a shock probation hearing. The second assignment of error must be overruled.
In his third assignment, Estepp contends he was prejudiced by the ineffective assistance of his lawyer at the shock probation hearing. In particular he contends his counsel was constitutionally ineffective in failing to cross-examine Dr. Susan Dyer and to call Dr. Victor McCarley as a witness in his behalf.
Estepp's lawyer stated at the August 26, 1998 hearing that he had reviewed Dr. Susan Dyer's original and supplemental report and little would be gained by calling her upon cross-examination. (Tr. 68). Dr. Dyer and Dr. McCarley issued extensive similar reports of Estepp's psychological status. The only disagreement was Dr. McCarley opined that Estepp could be treated for his aggressive personality problems outside an institutional setting. The record shows that Dr. McCarley was privately retained by Estepp's family members and counsel may have thought his live expert testimony was not worth the additional expense likely to be incurred by calling him as a witness.
In order to sustain a claim of ineffective assistance of counsel, an appellant must demonstrate that counsel's representation fell below an objective standard of reasonableness and that he was prejudiced as a result of his counsel's actions or inaction. Strickland v. Washington
(1984), 466 U.S. 668, 104 S.Ct. 2052. In applying this test, "a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance [.]" Id. at 689.
Generally, trial counsel's decisions about which witnesses to call at trial are matters of trial strategy and will not be held to constitute ineffective assistance of counsel. State v. Smith (1996),115 Ohio App.3d 419, 426, appeal dismissed (1997), 79 Ohio St.3d 1458, citing State v. Clayton (1980), 62 Ohio St.3d 45, 49, certiorari denied
(1980), 449 U.S. 879, 101 S.Ct. 227. The appellant has failed to demonstrate his counsel's ineffectiveness on the state of this record. The third assignment of error is overruled.
The judgment of the trial court is Affirmed.
WOLFF, P.J., and YOUNG, J., concur.