DECISION.
{¶ 1} In November 2002, plaintiff-appellee Great American Life Insurance Company ("Great American") filed a creditor's bill and complaint pursuant to R.C. 2333.01 against defendants Morley Thompson and the Thompson Trust, as well as defendant-appellant The Patricia Smith Thompson Trust ("PST Trust"), in an attempt to collect on a prior judgment it had obtained against Thompson and the Thompson Trust for approximately $6,000,000 on personal guaranties. Great American had named the PST Trust as a defendant because it had recently discovered that Thompson was a beneficiary of the trust who had, in the past, requested and received year-end distributions and expected future distributions.
 {¶ 2} In its creditor's-bill complaint, Great American sought an order declaring that it had a first lien upon Thompson's interest in the trust and directing the PST Trust to distribute to Great American any money that became payable to Thompson until Great American's judgment was satisfied.
 {¶ 3} The PST Trust argued that a spendthrift provision in the trust and a judgment entry by the Hamilton County probate court, entered July 16, 2001, prevented Great American from reaching any distribution that may have come due to Thompson. The probate court's judgment entry ordered that "no further distributions be made to Morley Thompson regardless of any circumstance or entitlement. Should Morley Thompson become entitled to any distribution of Trust assets for any reason, said distribution shall be applied against Morley Thompson's debts to the Trust." The record demonstrates that this order was entered after it had been established that Thompson, while executor of his late wife's estate, had improperly disposed of trust assets.
 {¶ 4} A bench trial was held on the validity of the PST Trust's affirmative defenses. At trial, it was undisputed that the terms of the trust ("Paragraph Eight") entitled Thompson to income from the trust assets and gave him the right to withdraw $5,000, plus 5% of the fair market value of the trust, at the end of each year if he was alive on the last day of the year, and if he made a written request and withdrew that amount within thirty days of the last day of the year. Additional testimony demonstrated that the trustees of the PST Trust did not have the discretion to deny the year-end distribution to Thompson.
 {¶ 5} The trial court concluded that the spendthrift provision did not prohibit Great American from asserting an equitable lien on the nondiscretionary trust distributions to Thompson, and that Great American had a priority lien on that money in preference to the PST Trust, despite the probate court's order directing the trustees to retain any money due to Thompson in order to pay off Thompson's debt to the trust.
 {¶ 6} The PST Trust now appeals, bringing forth four assignments of error. For the following reasons, we affirm.
 {¶ 7} In its first assignment of error, the PST Trust argues that the trial court erred in granting a creditor's bill in Great American's favor, because the spendthrift provision in the trust prevented creditors from attaching Thompson's interest in the trust. We are unpersuaded.
 {¶ 8} It is undisputed that the trust contained a spendthrift provision. Article Seventeen of the trust stated that, "[t]o the extent permitted by law, no interest of any beneficiary in the income or principal of any trust hereby created shall be subject to pledge, assignment, sale or transfer in any manner, nor shall any beneficiary have power in any manner to anticipate, change or encumber his or her interest, nor shall said interest of any beneficiary be liable or subject in any manner while in the possession of my Trustees for the debts, contracts, liabilities, engagement, or torts of such beneficiary."
 {¶ 9} Ohio honors spendthrift provisions in trusts.[1]
A spendthrift provision in effect prevents creditors from reaching a beneficiary's nonalienable interest in trust property. But it is black-letter trust law that a spendthrift provision cannot protect assets that a beneficiary has an unconditional right to withdraw. "An intended spendthrift restraint is * * * invalid with respect to a nonsettlor's interest in trust property over which the beneficiary has the equivalent of ownership, entitling the beneficiary to demand immediate distribution of the property. Thus, if an income beneficiary also holds a presently exercisable general power of appointment (that is, a power currently to compel distribution of trust property to the power holder), a spendthrift restraint will not prevent the beneficiary's creditors * * * from reaching the property that is subject to the power."[2]
 {¶ 10} Here, Thompson's power to withdraw $5000 and five percent of the trust corpus at the end of each year was unconditional. He merely needed to be alive at the end of each year.[3] Because Thompson essentially had an "unfettered ability to possess and own" trust assets, the assets subject to Thompson's demand were not protected by the spendthrift provision and sheltered from creditors.[4] Here, the power to withdraw money from the trust was akin "to having money in the bank."
 {¶ 11} Because we hold that the spendthrift provision here was invalid to protect Thompson's interest in year-end distributions as set forth in Paragraph Eight of the trust, we overrule the first assignment of error.
 {¶ 12} In the PST Trust's second assignment of error, it contends that the trial court erred by granting Great American a secured priority interest in Thompson's year-end distributions in preference to PST Trust's interest in those distributions. The PST Trust argues that the July 16, 2001, probate order changed Thompson's interest in the trust, and that by granting Great American a secured priority interest in trust distributions, the court essentially gave it a greater interest in the PST Trust than the interest possessed by Thompson. We disagree.
 {¶ 13} First, the probate order did not change Thompson's interest in the trust. It simply directed the trustees not to make any more discretionary distributions to Thompson until he had repaid his debt of nearly $1,300,000 to the trust. The order also stated that if Thompson became entitled to a distribution, such as a year-end distribution, then the trustees were to use that money to reduce Thompson's debt to the trust. But this order did not amount to a lien on Thompson's interest.[5]
 {¶ 14} Unlike Great American, the PST Trust, also essentially a creditor of Thompson, never sought to obtain a lien or to secure its interest in Thompson's right to withdraw money at the end of each year. By the filing of the creditor's-bill complaint and the service upon the PST Trust, an equitable lien arose by operation of law in Great American's favor on Thompson's interest in nondiscretionary distributions of trust property. Under these circumstances, the PST Trust occupied the position of an unsecured creditor whose interest in Thompson's right to withdraw was subordinate to Great American's secured interested.[6]
 {¶ 15} The second assignment of error is overruled.
 {¶ 16} In its third assignment of error, the PST Trust asserts that the trial court erred by ordering the parties to petition the probate court to modify its order of July 16, 2001, so that it would be consistent with the trial court's decision granting a creditor's bill in favor of Great American. We are unpersuaded.
 {¶ 17} The trial court's judgment entry directed the parties "to petition the Hamilton County Probate Court to modify" its July 16, 2001, order to take into account the trial court's decision to grant a creditor's bill in favor of Great American. We conclude that there was nothing improper about the trial court's order to petition the probate court. The trial court recognized that its decision would have an effect on the probate court's order, and since the probate court had exclusive jurisdiction over matters pertaining directly to the administration of estates, it was important for the probate court to determine how the common pleas court's decision might affect the particular trust assets within the probate court's jurisdiction. The third assignment of error is overruled.
 {¶ 18} In its final assignment of error, the PST Trust maintains that the trial court's judgment entry granting Great American its creditor's bill was not a final, appealable order. The PST Trust claims that because it is unclear how Great American is going to execute its creditor's bill, the court must have failed to adjudicate all the claims before it.
 {¶ 19} Here, the trial court's judgment entry was a final order because it disposed of all of Great American claims against the PST Trust. Because there may be issues regarding the enforcement of a judgment entry does not invalidate the entry as a final, appealable order. The fourth assignment of error is overruled.
 {¶ 20} Therefore, the judgment of the trial court is affirmed.
Sundermann and Hendon, JJ., concur.
[1] Scott v. Bank One Trust Co. (1991), 62 Ohio St.3d 39,577 N.E.2d 1077, paragraph four of the syllabus.
[2] See Restatement of the Law 3d of Trusts (2003), Section 58, Comment on Subsection (1), part b(1).
[3] See Samson v. Bertok (Dec. 19, 1986), 6th Dist. No. WD-86-3, citing McDonald v. Evatt (1945), 145 Ohio St. 457,62 N.E.2d 164 ("the Ohio Supreme Court [has] stated that where the beneficiary could force the trustee to pay him, the court could likewise force the trustee to pay the creditor").
[4] See In re Rolfe [Bankr. Ct. N.D.Ill. 1983], 34 B.R. 159,161; see, also, In Re Baldwin [Bankr. Ct. S.D.Ohio 1992],142 B.R. 210, 215 (spendthrift provision invalid because "terms of the Trust * * * afford the [beneficiary] the ability to exercise dominion and control over the Trust which is contrary to the purpose and operation of a spendthrift trust"); In re Leimbach
[Bankr. Ct. S.D.Ohio 1989], 99 B.R. 796, 801 (beneficiary's "absolute right" to receive his vested interest in trust assets "causes the spendthrift provisions of the Plan to be invalid and unenforceable under Ohio law").
[5] Liens may only be created by agreement or by a fixed rule of law, but not by courts. See 51 American Jurisprudence 2nd
of Liens (2004), Section 11.
[6] See Gaib v. Gaib (1983), 14 Ohio App.3d 97, 101,470 N.E.2d 189 (recognizing that equity does not permit "an unsecured creditor who sits on his rights [to stand] in the same position as a creditor who acquires a lien over specific property" by way of a creditor's bill statute).