SOWERS, Trustee, Appellant,

v.

LUGINBILL, Appellee.

[Cite as *Sowers v. Luginbill,* 175 Ohio App.3d 745, 2008-Ohio-1486.]

Court of Appeals of Ohio,
Third District, Van Wert County.

No. 15–07–14.

Decided March 31, 2008.

David Cheney and Steven Diller, for appellant.

G. Scott McBride, for appellee.

PRESTON, Judge.

## I. *Facts*

{¶ 1} Defendant-appellant, John Sowers, successor trustee of the Gordon E. Sowers Living Trust, appeals the judgment of the Van Wert Court of Common Pleas granting summary judgment in favor of plaintiff-appellee, Melanie Luginbill, n.k.a. Melanie Myers. For reasons that follow, we affirm.

{¶ 2} On August 22, 2005, Luginbill and Gordon Sowers ("Gordon") were involved in a motor-vehicle accident. Luginbill's vehicle collided with Gordon's vehicle at the intersection of U.S. Route 224 and C.R. 418[1] in Van Wert County, Ohio. Gordon was cited for failure to yield the right of way and was, without much contention, the cause of the accident.

{¶ 3} Luginbill suffered physical injuries, underwent several surgeries, and missed several months of work because of the accident. On April 26, 2006, Luginbill filed a complaint in the Van Wert Court of Common Pleas against Gordon, alleging damages and injuries she sustained as a result of his negligent driving in case No. CV06–04–164.

{¶ 4} Unexpectedly on January 11, 2007, however, Gordon died testate. Gordon's last will was filed in the Van Wert County Probate Court on March 2, 2007, and John Sowers, Gordon's brother, was appointed executor of the estate.

---

1. Defendant's brief alleges that the accident occurred at the intersection of U.S. 224 and U.S. 30 (Lincoln Highway). No citation was found in the record to support either location; however, most of the record documents list C.R. 418. The location of the accident is not pertinent to the disposition here, so we opt to use C.R. 418.

Thereafter, Luginbill filed a motion to substitute executor and death trustee John Sowers as a party defendant in case No. CV06–04–164, which the trial court granted on March 19, 2007.

{¶ 5} On March 16, 2007, John Sowers filed an action for declaratory judgment, case No. CV07–03–107, arguing that the trust assets could not be used to satisfy Luginbill's personal-injury claims. John Sowers then filed a motion for summary judgment in case No. CV06–04–164.

{¶ 6} On August 15, 2007, Luginbill filed a motion for summary judgment in case Nos. CV06–04–164 and CV07–03–107, alleging that she was entitled to trust assets to satisfy her personal injuries arising from Gordon's negligence.

{¶ 7} On October 12, 2007, the trial court granted Luginbill's motion for summary judgment in both cases and denied John Sowers's motion for summary judgment. On November 1, 2007, the trial court ordered that its October 12th entry in case No. CV07–03–107 was a final, appealable order and ordered that case No. CV06–04–164 be stayed pending appeal.

{¶ 8} John Sowers now appeals the trial court's grant of summary judgment in case No. CV07–03–107 and asserts six assignments of error for review. Since several assignments of error raise related issues, we combine them where appropriate.

## II. *Standard of Review*

{¶ 9} We review a decision to grant summary judgment de novo. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243, citing *Grafton v. Ohio Edison* (1996), 77 Ohio St.3d 102, 105, 671 N.E.2d 241. Summary judgment is proper where (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can reach but one conclusion when viewing the evidence in favor of the nonmoving party, and the conclusion is adverse to the nonmoving party. Civ.R. 56(C); *Grafton*, 77 Ohio St.3d at 105, 671 N.E.2d 241, citing *State ex rel. Cassels v. Dayton City School Dist. Bd. of Edn.* (1994), 69 Ohio St.3d 217, 219, 631 N.E.2d 150.

{¶ 10} Material facts are those facts that might affect the outcome of the suit under the governing law. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 340, 617 N.E.2d 1123, citing *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202. Whether a genuine issue exists is answered by the following inquiry: Does the evidence present a sufficient disagreement to require submission to a jury or is it so one-sided that one party must prevail as a matter of law[?] Id., citing *Liberty Lobby, Inc.*, 477 U.S. at 251–252, 106 S.Ct. 2505, 91 L.Ed.2d 202.

{¶ 11} Summary judgment should be granted with caution, resolving all doubts in favor of the nonmoving party. *Perez v. Scripps–Howard Broadcasting Co.* (1988), 35 Ohio St.3d 215, 217, 520 N.E.2d 198. The purpose of summary judgment is not to try issues of fact, but is, rather, to determine whether triable issues of fact exist. *Lakota Local School Dist. Bd. of Edn. v. Brickner* (1996), 108 Ohio App.3d 637, 643, 671 N.E.2d 578.

III. *Analysis*

### Assignment of Error No. I

The trial court erred in finding that plaintiff/appellee was not a subsequent creditor.

### Assignment of Error No. II

The trial court erred in finding that *Schofield v. Cleveland Trust Co.* does not apply to this case.

{¶ 12} In his first assignment of error, John Sowers argues that the trial court erred in determining that Luginbill was not a subsequent creditor. John Sowers further argues that because Luginbill is a subsequent creditor, the trust property is not subject to her claim. In his second assignment of error, John Sowers alleges that the trial court erred as to assignment of error one because it failed to apply *Schofield v. Cleveland Trust Co.* (1939), 135 Ohio St. 328, 14 O.O. 224, 21 N.E.2d 119. We disagree.

### A. *Relevant Definitions and Question Presented*

{¶ 13} A "subsequent creditor" is defined as "[a] creditor whose claim comes into existence *after a given fact or transaction,* such as the recording of a deed or the execution of a voluntary conveyance." Black's Law Dictionary (7th Ed.Rev. 1999) 376. (Emphasis added.) The relevant question becomes this: what is the "given fact or transaction" upon which to determine whether Luginbill is a subsequent creditor?

{¶ 14} John Sowers argues that the pertinent transaction was the 1997 transfer of assets into the trust, which occurred at the trust's creation, or at the latest, the 2001 transfer of assets when the trust was reinstated. Thus, John Sowers maintains that because Luginbill filed her tort claim subsequent to these transfers, Luginbill is a subsequent creditor.

{¶ 15} Luginbill, on the other hand, argues that the pertinent fact was Gordon's death, which caused the pertinent transaction—the transfer of all estate assets into the trust via the pour-over provision of Gordon's last will. Thus,

Luginbill maintains that because she filed her tort claim prior to Gordon's death and the transfer of assets via the will, she is not a subsequent creditor.

{¶ 16} The trial court agreed with Luginbill. In its judgment entry, the trial court stated: "Plaintiff filed a claim against the deceased prior to his death and before any transfer to the trust by operation of his will. Therefore, the Plaintiff is not a subsequent creditor of the deceased." We conclude that the trial court's analysis of the applicable case law was correct.

B. *Case Law*

{¶ 17} In concluding that Luginbill was not a subsequent creditor, the trial court relied upon *Schofield*, 135 Ohio St. 328, 14 O.O. 224, 21 N.E.2d 119. The facts are these. The settlor, Dr. G.A. Ehret, entered into a trust agreement with the Cleveland Trust Co. in 1925 and transferred a parcel of land to the trust company. Id. at 328, 14 O.O. 224, 21 N.E.2d 119. In 1932, Dr. Ehret and the trust company drafted a second trust agreement cancelling the original trust. Id. In this second agreement, Dr. Ehret reserved the right to receive income from and occupy the transferred real estate. Id. The trustee was required to obtain written approval for sales and purchases of property for the trust. Id. The agreement also provided that Dr. Ehret could revoke all or part of the trust during his lifetime. Id. At his death, the trustee was to distribute the trust property to Dr. Ehret's wife and daughter equally. Id.

{¶ 18} In 1936, Dr. Ehret died intestate, survived by his wife and daughter. Id. At his death, the 1932 trust agreement was in full effect, and the trust's only asset was the real estate originally transferred in 1925. Id. Subsequent to Dr. Ehret's death, plaintiff Douglas F. Schofield, trustee, filed an action to revoke the trust, sell the property, and apply the proceeds to Dr. Ehret's debts, which included plaintiff's claim for $628.25, with interest, for the rental of office space in the plaintiff's building. Id.

{¶ 19} The trial court ordered that the trust be revoked, the property be sold, and the proceeds be applied first, to taxes and court costs; second, to payments of claims given priority by law; third, to the payment of the widow's allowance for the year; and fourth, to the payment of general claims. Id. The court of appeals, however, reversed, dismissing the plaintiff's action and sustaining the trust in all aspects. Id. The Supreme Court of Ohio affirmed. Id.

{¶ 20} Based upon these facts, the Ohio Supreme Court set forth the legal issue for consideration as follows: "We come now to the question of the validity of the trust as against subsequent creditors of the settlor." Id. at 332, 14 O.O. 224, 21 N.E.2d 119. The court then interpreted Section 8617 of the General Code, effective since 1921, which provided:

All deeds of gifts and conveyance of real or personal property made in trust for the exclusive use of the person or persons making the same shall be void and of no effect, but the creator of a trust may reserve to himself any use or power, beneficial or in trust, which he might lawfully grant to another, including the power to alter, amend or revoke such trust, and such trust shall be valid as to all persons, *except that any beneficial interest reserved to such creator shall be subject to be reached by the creditors of such creator, and except that where the creator of such trust reserves to himself for his own benefit a power of revocation, a court of equity, at the suit of any creditor or creditors of the creator, may compel the exercise of such power of revocation so reserved, to the same extent and under the same conditions that such creator could have exercised the same.*

(Emphasis added.) Id. at 333, 14 O.O. 224, 21 N.E.2d 119. Interpreting this statute, the court held that the pertinent language, emphasized above, meant the following:

[T]hat the rights of creditors to reach the beneficial interest of the settler—the interest he has retained for his own benefit including any returns or earnings from the trust property—and to force a revocation of the trust and subject the trust corpus to the payment of their claims, exists only during the lifetime of the settlor.

Id. Furthermore, the court held that the statute is "inapplicable to creditors who do not act while the settlor is still alive." Id. at 334, 14 O.O. 224, 21 N.E.2d 119.

{¶ 21} Although the court in *Schofield* did not state why Schofield was a subsequent creditor, we conclude that the Ohio Supreme Court determined that Schofield was a subsequent creditor because he had filed his claim after the settlor's death. We reach this conclusion for several reasons. From the outset of its opinion, the court in *Schofield* identified the plaintiff as a subsequent creditor based upon the facts of the case. Id. at 332, 14 O.O. 224, 21 N.E.2d 119. The court placed special emphasis on the fact that the plaintiff had filed his claim after the settlor's death even though the claim arose during the settlor's lifetime. Id. at 328, 331, 333–335, 14 O.O. 224, 21 N.E.2d 119. Finally, the court concluded that because Schofield had filed his claim after the settlor's death, he did not have a right to access the trust property under Section 8617 of the General Code.

{¶ 22} According to *Schofield,* then, the determinative "fact or transaction" upon which to determine whether Luginbill is a subsequent creditor is the settlor's death. Since Luginbill filed her claim prior to the settlor's death, she is not a subsequent creditor. We therefore find no error in the trial court's application of *Schofield* and its conclusion that Luginbill is not a subsequent creditor.

C. *Policy Considerations*

{¶ 23} In addition to the fact that *Schofield* supports the trial court's conclusion that Luginbill is not a subsequent creditor, several policy reasons exist for finding that the settlor's death is the event that determines a creditor's status for purposes of accessing trust property.

{¶ 24} First, the date of the settlor's death is a time certain. A time certain provides those seeking to create trusts with an expectation as to their rights and obligations under the trust and also provides counsel with the ability to give clear advice on the issue of creditor rights. Certainty is especially important in estate planning and should be encouraged by the courts. See *Oliver v. Bank One, Dayton, N.A.* (Jan. 31, 1990), 2d Dist. No. 11817, 1990 WL 7942, at *4, overruled on other grounds by *Oliver v. Bank One, Dayton, N.A.* (1991), 60 Ohio St.3d 32, 573 N.E.2d 55.

{¶ 25} Second, the date of the settlor's death is expedient. It promotes the vesting of property rights following the settlor's death absent any claim filed prior thereto and the prompt filing of creditor claims. See *Winston v. James* (Sept. 14, 1937), 2d Dist. No. 1450, 1937 WL 2345, at *4; *Slifer Packing Co. v. Elcook* (1917), 10 Ohio App. 45, 1917 WL 1459, at *4.

{¶ 26} Third, the date of the settlor's death promotes judicial economy. The settlor's death provides a definitive point in time upon which the court can render a determination. Appellant's date, the date of transfer of assets into the trust, is problematic and needlessly complicated.

{¶ 27} Appellant suggested that the creditor's status should be determined by the date of the trust's creation when the initial transfer of funds to the trust occurred; however, this argument is both underinclusive and overinclusive. The argument is underinclusive because it looks only at the initial transfer of assets into trust. If the pertinent date is the date of the transfer of assets, why not consider when *each* asset was legally transferred? In this case, a total of 14 different assets where transferred into the trust at various times. As a result of this underinclusivity, it makes the determination overly complicated by requiring the court to examine each transferred asset individually.

{¶ 28} The argument is overinclusive because it would defeat valid creditor claims. R.C. 5805.06(A)(1) provides that the property of a revocable trust is subject to the claims of settlor's creditors. Appellant's argument, however, would require the creditor to show that his/her claim was filed prior to any transfers to the trust. Practically speaking, this makes little sense. At the time the creditor files his/her claim, any of the existing trust assets could not be accessed; rather, the creditor could only access those assets placed in the trust following the filing of the claim. If that is true, then the settlor can simply decline to continue

transfers to the trust following the filing of the claim. As a result, the creditor would have no assets to satisfy his/her claim. This scenario defeats the purpose of R.C. 5805.06, which was drafted, in part, to protect creditors from the use of trusts to protect assets from legitimate claims.

■ {¶ 29} For all these further reasons, we hold that the death of the settlor is the relevant date for determining a creditor's status when he/she is attempting to subject revocable trust assets to his/her claim.

### D. *Fraudulent Transfer Act, Black's Law Definitions, & Creditor Status*

■ {¶ 30} As an alternative to his argument that Luginbill is a subsequent creditor, John Sowers also argues that Luginbill is not a creditor at all because she did not obtain a lump-sum judgment. This argument is also without merit.

■ {¶ 31} The Ohio Uniform Fraudulent Transfer Act ("FTA") provides several pertinent definitions that are applicable to transfers of property into trust. See, e.g., *Blood v. Nofzinger,* 162 Ohio App.3d 545, 2005-Ohio-3859, 834 N.E.2d 358; *Comer v. Calim* (1998), 128 Ohio App.3d 599, 716 N.E.2d 245. The FTA provides, " 'Creditor' means a person who has a claim." R.C. 1336.01(D). " 'Claim' means a right to payment, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." R.C. 1336.01(C). "[A] tort claimant becomes a creditor within the meaning of R.C. 1336.01(C) at the moment in which the cause of action accrues." *Stein v. Brown* (1985), 18 Ohio St.3d 305, 308, 18 OBR 352, 480 N.E.2d 1121.

{¶ 32} Black's Law Dictionary provides similar definitions for the terms "creditor" and "claim" as well. "Creditor" includes "[a] person or entity with a definite claim against another," and a "claim" is "[t]he aggregate of operative facts giving rise to a right enforceable by a court" or a "cause of action." (7th Ed.Rev.1999) 240, 375.

{¶ 33} The cause of action here accrued on the date of the accident, August 22, 2005. As of that date, Luginbill had a "claim" and was a "creditor" under both the FTA and Black's Law definitions. R.C. 1336.01(C) and (D); *Brown,* 18 Ohio St.3d at 308, 18 OBR 352, 480 N.E.2d 1121; Black's Law Dictionary (7th Ed.Rev.1999) 240, 375. Appellant's argument is, therefore, without merit.

{¶ 34} For all these reasons, the trial court did not err in finding that Luginbill was not a subsequent creditor according to the applicable case law and definitions.

{¶ 35} John Sowers's first and second assignments of error are, therefore, overruled.

### Assignment of Error No. III

The trial court erred in ruling that the trust assets of decedent, Gordon E. Sowers, were subject to claims of the plaintiff/ appellee, as a matter of law, should she prevail in this lawsuit.

### Assignment of Error No. IV

The trial court erred when it, essentially, revoked the Gordon E. Sowers living trust, which became irrevocable at the time of death.

### Assignment of Error No. V

The trial court erred in granting the plaintiff/appellee's motion for summary judgment

### Assignment of Error No. VI

The trial court erred in overruling the defendant/appellant's motion for summary judgment.

{¶ 36} In his third assignment of error, John Sowers argues that as a result of the two prior errors, the trial court erred in finding that Luginbill can access the trust assets to satisfy her tort claim. In his fourth, fifth, and sixth assignments of error, John Sowers argues that the trial court erred by effectively revoking the trust, which became irrevocable at Gordon's death. John Sowers also argues that as a result of all these prior errors, the trial court erred in granting Luginbill's motion for summary judgment and in overruling his same motion. We disagree.

■ {¶ 37} When rendering its determination that the trust property was subject to Luginbill's tort claim, the trial court stated:

Ohio Revised Code § 5805.06 provides that during the lifetime of a settlor the property of a revocable trust is subject to claims of the settlor's creditor.

The trust in the present case was a revocable trust. Plaintiff's claim attached to the decedent's assets and the trust assets during the lifetime of the deceased. Therefore, the property in the trust is subject to claims of the Plaintiff.

We agree with the trial court's conclusion.

{¶ 38} In order to determine whether the trial court applied the correct statute, we must verify what type of trust Gordon created. Gordon's trust provides the following language: "On my death, my Trustee is authorized, but not directed, to pay the following: * * * The payments authorized under this Section are discretionary * * *." The trust contains several other sections giving the trustee discretion as well. The language of the trust thus indicates

Gordon's intent to create a discretionary trust. 91 Ohio Jurisprudence 3d (2008) Trusts, Section 192. Gordon's trust also provides the following provision:

Section 3. Protective Clause

To the fullest extent permitted by law, the interests of all the beneficiaries in the various trusts and trust property subject to this agreement, except for my interest therein while I am living, shall not be alienated, pledged, anticipated, assigned, or encumbered unless specifically authorized by the terms of this agreement.

Such interests, while they remain in trust property, shall not be subject to legal process or to the claims of any creditors.

This language indicates Gordon's intent to create a spendthrift trust. 91 Ohio Jurisprudence 3d (2008) Trusts, Section 8, citing *Sherrow v. Brookover* (1963), 174 Ohio St. 310, 312, 22 O.O.2d 373, 189 N.E.2d 90, overruled on other grounds by *Scott v. Bank One Trust Co.* (1991), 62 Ohio St.3d 39, 577 N.E.2d 1077. Spendthrift and discretionary trusts are governed by Ohio Revised Code Chapter 5805. Thus, the trial court applied the correct statute.

{¶ 39} R.C. 5805.06(A)(1) provides: "During the lifetime of the settlor, the property of a revocable trust is subject to the claims of the settlor's creditors." The statute's plain language provides that the property of a revocable trust is subject to claims of the settlor's creditor. There is no dispute that at the time Luginbill filed her tort claim, the settlor was alive and had a revocable trust. Because Luginbill's claim was filed within the settlor's lifetime, the express language of R.C. 5805.06(A)(1) applies. The fact that the settlor died following the filing of the claim does not defeat Luginbill's ability to access the trust property. We therefore hold that the trial court correctly applied the statute in this case.

■ {¶ 40} Furthermore, allowing Luginbill to access the trust property is not only consistent with the statutory language, but also consistent with R.C. 5805.06's overall purpose—to protect the settlor's creditors. This is evident from the statutory structure and the Official Comments. When read together, R.C. 5805.06(A)(1) and (A)(2) provide:

(A) Whether or not the terms of a trust contain a spendthrift provision, all of the following apply:

(1) During the lifetime of the settlor, the property of a revocable trust is subject to claims of the settlor's creditors.

(2) With respect to an irrevocable trust, a creditor or assignee of the settlor may reach the maximum amount that can be distributed to or for the settlor's benefit. If a trust has more than one settlor, the amount the creditor or

assignee of a particular settlor may reach may not exceed the settlor's interest in the portion of the trust attributable to that settlor's contribution.

These provisions, combined, provide creditor protection when the settlor creates either a revocable trust—which, by definition, allows the settlor access to the trust property—or an irrevocable trust when the settlor retains an interest in the trust property. By providing protection for creditors in *either* circumstance, it is evident that the legislature sought to provide comprehensive creditor protection.

{¶ 41} The legislature's intent to protect the settlor's creditors is also evident from the Official Comments. R.C. 5805.06(A)(1)'s Official Comment provides:

Subsection (a)(1) states what is now a well accepted conclusion, that a revocable trust is subject to the claims of the settlor's creditors while the settlor is living. *See* Restatement (Third) of Trusts Section 25 cmt. e (Tentative Draft No. 1, approved 1996). Such claims were not allowed at common law, however. *See* Restatement (Second) of Trusts Section 330 cmt. o (1959). Because a settlor usually also retains a beneficial interest that a creditor may reach under subsection (a)(2), the common law rule, were it retained in this Code, would be of little significance. *See* Restatement (Second) of Trusts Section 156(2) (1959).

Restatement of the Law 3d, Trusts (2003), Section 25, Comment *e*, cited above, provides a further explanation on the rights of the settlor's creditors:

e. *Rights of creditors and other matters.* Although a revocable trust is nontestamentary and is therefore not subject to the Wills Act or to the usual procedures of estate administration, property held in the trust is subject to the claims of creditors of the settlor or of the deceased settlor's estate if the same property belonging to the settlor or the estate would be subject to the claims of the creditors, taking account of homestead rights and other exemptions.

This result is not dependent on the trust being "illusory" or "testamentary," or on the transfer being a fraudulent conveyance, but is based on the sound public policy of basing the rights of creditors on the substance rather than the form of the debtor's property rights. Nor is the result affected by the presence of a spendthrift provision in the terms of the trust (see § 58(2)) or by whether a creditor's claim arose before or after the transfer.

{¶ 42} R.C. 5805.06(A)(2)'s Official Comment provides:

Subsection (a)(2), which is based on Restatement (Third) of Trusts Section 58(2) and cmt. e (Tentative Draft No. 2, approved 1999), and Restatement (Second) of Trusts Section 156 (1959), follows traditional doctrine in providing that a settlor who is also a beneficiary may not use the trust as a shield against the settlor's creditors. The drafters of the Uniform Trust Code concluded that traditional doctrine reflects sound policy. Consequently, the drafters rejected the approach taken in States like Alaska and Delaware, both of which allow a

settlor to retain a beneficial interest immune from creditor claims. *See* Henry J. Lischer, Jr., *Domestic Asset Protection Trusts: Pallbearers to Liability*, 35 Real Prop. Prob. Tr. J. 479 (2000); John E. Sullivan, III, *Gutting the Rule Against Self–Settled Trusts: How the Delaware Trust Law Competes with Offshore Trusts*, 23 Del. J. Corp. L. 423 (1998). Under the Code, whether the trust contains a spendthrift provision or not, a creditor of the settlor may reach the maximum amount that the trustee could have paid to the settlor-beneficiary. If the trustee has discretion to distribute the entire income and principal to the settlor, the effect of this subsection is to place the settlor's creditors in the same position as if the trust had not been created.

{¶ 43} Reviewing the statutory language in conjunction with the Official Comments, we hold that the overall intent of the legislature to protect the settlor's creditors becomes clear. Therefore, we conclude that allowing Luginbill to access the trust property in satisfaction of her tort claim—filed during the settlor's lifetime—is consistent with R.C. 5805.06's plain language and legislative purpose. We cannot, therefore, hold that the trial court erred in concluding that the trust property is subject to Luginbill's claim.

{¶ 44} For these reasons, we hold that the trial court did not err in concluding that Luginbill could access the trust funds in satisfaction of her tort claim. We further hold that the trial court did not err in granting summary judgment in her favor and denying appellant's motion for summary judgment.

{¶ 45} John Sowers's assignments of error three, four, five, and six, are, therefore, overruled.

### IV. *Conclusion*

{¶ 46} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

Judgment affirmed.

SHAW, P.J., and ROGERS, J., concur.