[Cite as *Zipkin v. FirstMerit Bank, N.A.*, 2021-Ohio-2583.]

## COURT OF APPEAL OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

LEWIS A. ZIPKIN, ET AL.,　　　　　　：

　　　　Plaintiffs-Appellees/　　　：
　　　　Cross-Appellants,

　　　　　　　　　　　　　　：　　　　No. 109501

　　v.

　　　　　　　　　　　　　　：

FIRSTMERIT BANK N. A.,

　　　　　　　　　　　　　　：

　　　　Defendant-Appellant/
　　　　Cross-Appellee.

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:**　AFFIRMED IN PART, REVERSED IN PART, AND
　　　　　　　REMANDED
**RELEASED AND JOURNALIZED:**　July 29, 2021

---

Civil Appeal from the Cuyahoga County Court of Common Pleas
Case No. CV-18-891117

---

### *Appearances:*

Burkes Law, L.L.C., and John F. Burke, III, *for appellees/
cross-appellants*.

Giffen & Kaminski, L.L.C., Kerin Lyn Kaminski and
Melissa A. Laubenthal, *for appellant/cross-appellee*.

EMANUELLA D. GROVES, J.:

{¶ 1} Defendant-appellant/cross-appellee, FirstMerit Bank N. A. ("First Merit"), appeals the trial court's decision in favor of plaintiffs-appellees/cross-appellants, Lewis A. Zipkin ("Zipkin") as trustee of the Lewis A. Zipkin Revocable Trust ("the Revocable Trust") on its breach of contract claim alleging that FirstMerit improperly converted funds belonging to the Revocable Trust to satisfy an undisputed debt Zipkin, as guarantor, owed the bank.[1] Zipkin cross-appeals the trial court's decision in favor of the bank on his remaining claims. For the reasons that follow, we affirm in part, reverse in part, and remand the trial court's decision.

## Procedural History

{¶ 2} On January 4, 2018, Zipkin, in his individual capacity, and as trustee of the Revocable Trust, refiled a complaint against FirstMerit, alleging claims of breach of contract, promissory estoppel, conversion, and breach of covenant of good faith, and fair dealing. Zipkin sought to recover $187,960.83 that FirstMerit removed from two accounts to satisfy a default on a loan, that Zipkin was the guarantor. On March 6, 2018, FirstMerit filed its answer to Zipkin's complaint and generally denied the material allegations therein.

---

[1] In the underlying action, Huntington National Bank ("Huntington"), answered on behalf of FirstMerit Bank and Citizens Bank. Huntington established that they were the real party in interest to the claims of Zipkin, in his individual capacity, and as Trustee of the Lewis A. Zipkin Revocable Living Trust, on the basis that since the time of the original loan transaction, Citizens Bank merged with FirstMerit, who later merged with Huntington. However, for consistency with the case caption, we refer to this party as FirstMerit throughout the opinion.

**{¶ 3}** On August 1, 2018, FirstMerit filed a motion for summary judgment. On August 15, 2018, Zipkin filed a motion for partial summary judgment, both in his individual capacity and as trustee of the Revocable Trust. On February 19, 2019, the trial court denied the parties' respective motions. On December 5, 2019, the trial court conducted a bench trial to determine whether FirstMerit's set off against the account held in the Revocable Trust was proper.

## **Bench Trial**

**{¶ 4}** At the trial, the following facts were established through the testimony of three witnesses, namely: 1) Zipkin, in his individual capacity and as Trustee; 2) Venera Izant ("Izant"), Citizens' former employee, who functioned in the capacity as a personal banker to Zipkin at the time of the loan; and 3) Christine Knab ("Knab"), FirstMerit's current employee, who handled matters relating to the loan since 2012.

**{¶ 5}** In the early 1970s, Zipkin, an attorney and real estate developer, formed a trust for estate planning purposes and to purchase property located at 1854 Coventry Road in Cleveland Heights, Ohio ("the Coventry Property"). Over the years, the trust acquired additional properties. In 1991, the original trust instrument was destroyed in a fire. A restatement of the trust agreement, dated July 13, 2013, was presented as plaintiff's exhibit No. 25. Zipkin was also a long-standing customer of Citizens Bank ("Citizens"), that later merged with FirstMerit. The banking relationship included numerous loans and mortgages spanning several decades, as well as personal, business, and trust accounts.

{¶ 6} In May 2008, Citizens loaned $200,000 to 1854 Coventry Salad, Inc. ("Coventry Salad"), a nonparty to this action, under the terms of a promissory note ("the 2008 Note"), executed by Tom Bruhn ("Bruhn"), the president of Coventry Salad and a commercial guaranty ("the 2008 Guaranty") executed by Zipkin. At the time, Zipkin separately agreed to subordinate to Citizens any claim that he might have against Bruhn. The purpose of the loan was to establish the Bodega Restaurant ("Bodega").

{¶ 7} The 2008 Note did not set a final maturity date but, rather only required monthly payments of accrued interest and stated that the loan must be paid off immediately on the bank's demand. The loan listed Zipkin and Bruhn as guarantors and stated that the loan was secured by Bodega's business assets and a real estate mortgage on Zipkin's property located on Euclid Heights Boulevard, Cleveland Heights, Ohio, otherwise known as the Brantley Building.

{¶ 8} In June 2009, Coventry Salad executed a change in the terms of the agreement that increased the interest rate of the 2008 Note. Later in January 2012, Coventry Salad executed a new promissory note ("the 2012 Note"), and Zipkin executed a new commercial guaranty ("the 2012 Guaranty"). The 2012 Note set a maturity date, interest rate, principal payments calling for 11 installments of $2,334.94 and a final balloon payment of $186,297.63, due on January 23, 2013. The 2012 Note listed Zipkin, Bruhn, as well as Zipkin's company, Brantley Inc., as guarantors, and the Brantley Building as collateral.

{¶ 9} In addition, the 2012 Guaranty contained a "Right of Setoff" provision, that stated in pertinent part as follows:

> To the extent permitted by applicable law, Lender reserves a right of setoff in all Guarantor's accounts with Lender (whether checking, savings, or some other account). This includes all accounts Guarantor holds jointly with someone else and all accounts Guarantor may open in the future. However, this does not include any IRA or Keough accounts, or any trust accounts for which setoff would be prohibited by law. The Guarantor authorizes Lender, to the extent permitted by applicable law, to hold these funds if there is a default, and Lender may apply the funds in these accounts to pay what Guarantor owes under the terms of this Guaranty.

{¶ 10} Coventry Salad made the 11 monthly installments required under the 2012 Note, but it failed to make the final balloon payment of $186,297.63. As a result, on February 18, 2013, Citizens sent Zipkin a letter demanding that he honor the 2012 Guaranty and pay the 2012 Note in the principal amount of $197,944.74.

{¶ 11} On March 5, 2013, when Coventry Salad failed to make the balloon payment, Citizens exercised the right to setoff, under the 2012 Guaranty. Citizens set off $38,440.20, from account number 4534145596, held in Zipkin's name and $149,520.63, from account number 4534145604, held in the name of the Revocable Trust.

{¶ 12} Following the trial, the trial court issued a written opinion finding in favor of the Revocable Trust on the breach of contract claim and in favor of FirstMerit on the remaining claims.

{¶ 13} FirstMerit now appeals, assigning the following errors for review:

**Assignment of Error No. 1**
The trial court erred as a matter of law by not applying R.C. 5805.06 to find that the assets of the Revocable Trust Account were subject to creditors of the settlor and beneficiary of the Revocable Trust, Mr. Zipkin.

**Assignment of Error No. 2**
The trial court erred as a matter of law in finding that the terms of the Guaranty were breached by a set off against the assets of the Revocable Trust.

**Assignment of Error No. 3**
The trial court erred as a matter of law by finding that the Revocable Trust had standing to file this lawsuit as an intended third-party beneficiary of the Guaranty.

{¶ 14} Zipkin, in his individual capacity, and as trustee of the Revocable Trust, cross-appeals and assigns the following errors for our review:

**Cross-Assignment of Error No. 1**
The trial court erred when it concluded that plaintiff-appellee trustee failed to prove a breach of the covenant of good faith and fair dealing.

**Cross-Assignment of Error No. 2**
The trial court erred when it declined to find that defendant-appellant had wrongfully converted the monies held in the name of the trustee.

**Cross-Assignment of Error No. 3**
The trial court erred when it found plaintiff-appellant Lewis Zipkin had failed to prove breach of contract.

**Cross-Assignment of Error No. 4**
The trial court erred when it found plaintiff-appellee Lewis Zipkin had failed to prove his claim of promissory estoppel.

## Law and Analysis

{¶ 15} In the first assigned error, FirstMerit argues that the trial court erred by not applying R.C. 5805.06 to find that the assets of the revocable trust were subject to the claims of creditors.

**{¶ 16}** When reviewing questions of statutory interpretation, our standard of review is de novo. *Burnell v. Cleveland Mun. School Dist. Bd. of Edn.*, 8th Dist. Cuyahoga No. 106623, 2018-Ohio-4609, ¶ 19, citing *Elec. Classroom of Tomorrow v. Ohio Dept. of Edn.*, 154 Ohio St.3d 584, 2018-Ohio-3126, 118 N.E.3d 907, ¶ 11. A court's main objective when interpreting a statute is to determine and give effect to the legislative intent. *Gracetech Inc. v. Perez*, 2020-Ohio-3595, 154 N.E.3d 1123, ¶ 14 (8th Dist.), citing *State ex rel. Solomon v. Bd. of Trustees of the Police & Firemen's Disability & Pension Fund*, 72 Ohio St.3d 62, 65, 647 N.E.2d 486 (1995). We first look to the language of the statute itself to determine the intent of the General Assembly. *Id.*, citing *Stewart v. Trumbull Cty. Bd. of Elections*, 34 Ohio St.2d 129, 130, 296 N.E.2d 676 (1973). When a statute's meaning is clear and unambiguous, we apply the statute as written. *Gracetech* at *id.*, citing *Provident Bank v. Wood*, 36 Ohio St.2d 101, 105-106, 304 N.E.2d 378 (1973).

**{¶ 17}** The trial court's opinion stated in pertinent part that:

[FirstMerit] breached the 2012 Guaranty in two ways. First, it setoff an account that was not held by a guarantor or jointly with a guarantor of the underlying loan. Second, it setoff a trust account for which setoff would be prohibited by law.

**{¶ 18}** FirstMerit contends that R.C. 5805.06 controls and permits the setoff at issue. We now examine this claim.

**{¶ 19}** R.C. 5805.06 provides in pertinent part as follows:

(A) Whether or not the terms of a trust contain a spendthrift provision, all of the following apply:

(1) During the lifetime of the settlor, the property of a revocable trust is subject to claims of the settlor's creditors.

(2) Except to the extent that a trust is established pursuant to, or otherwise is wholly or partially governed by or subject to Chapter 5816 of the Revised Code, with respect to an irrevocable trust, a creditor or assignee of the settlor may reach the maximum amount that can be distributed to or for the settlor's benefit. If an irrevocable trust has more than one settlor, the amount distributable to or for a settlor's benefit that the creditor or assignee of a particular settlor may reach may not exceed that settlor's interest in the portion of the trust attributable to that settlor's contribution. The right of a creditor or assignee to reach a settlor's interest in an irrevocable trust shall be subject to Chapter 5816 of the Revised Code to the extent that that chapter applies to that trust.

R.C. 5805.06.

{¶ 20} In general, a "trust" is defined as "the right, enforceable in equity, to the beneficial enjoyment of property, the legal title to which is in another." *KeyBank N.A. v. Firestone*, 8th Dist. Cuyahoga No. 107307, 2019-Ohio-2910, ¶ 15, citing *In re Guardianship of Lombardo*, 86 Ohio St.3d 600, 603, 716 N.E.2d 189 (1999), quoting *Ulmer v. Fulton*, 129 Ohio St. 323, 339, 195 N.E. 557 (1935).

{¶ 21} When construing the provisions of a trust, the court's primary duty is to ascertain, within the bounds of the law, the intent of the settlor. *In re Trust U/W of Brooke*, 82 Ohio St.3d 553, 557, 697 N.E.2d 191 (1998). If the language of the trust agreement is unambiguous, the settlor's intent can be determined from the trust's express language. *Pack v. Osborn*, 117 Ohio St.3d 14, 2008-Ohio-90, 881 N.E.2d 237, ¶ 8. "The words in the trust are presumed to be used according to their common, ordinary meaning." *Id.*

{¶ 22} First, "[r]evocable," as applied to a trust, means revocable at the time of determination by the settlor alone or by the settlor with the consent of any person other than a person holding an adverse interest. R.C. 5801.01(R).

{¶ 23} As previously stated, the trial testimony established that the original trust instrument was destroyed in a fire. At this point, it is worth noting that in his deposition and trial testimonies, Zipkin referenced several trusts that could possibly have owned the bank account at issue. It was Zipkin's belief that the trust was created in either 1974 or 1975, but he could not locate the original instrument that he also believed was destroyed in a fire.

{¶ 24} As previously stated, the restatement of the trust agreement was presented as plaintiff's exhibit No. 25. Article I of the document stated in relevant part:

> Grantor reserves the power to revoke this Trust Agreement, in whole or in part, or to amend any of its provisions. Grantor may withdraw any insurance policy, security or other property belonging to the trust estate. This Trust Agreement shall become irrevocable upon the death of the Grantor.

Based on the above recitation, whether created in 1974 or 1975, whether lost or destroyed, we determine that the instrument was a revocable trust. The restatement document explicitly stated that the Grantor reserves the power to revoke and amend the agreement and that the agreement becomes irrevocable upon death of the Grantor.

{¶ 25} Having determined that the instrument was a revocable trust, we now determine whether Zipkin was the settlor of the trust. R.C. 5801.01(S) defines

a "settlor" as "a person, including a testator, who creates, or contributes property to, a trust." A settlor of a trust has, under most circumstances, unfettered discretion to dispose of her or his assets as the settlor so chooses. *Domo v. McCarthy*, 66 Ohio St.3d 312, 612 N.E.2d 706 (1993), citing *Scott v. Bank One Trust Co., N.A.,* 62 Ohio St.3d 39, 577 N.E.2d 1077 (1991).

{¶ 26} Our review of the restatement document reveals that it lists Zipkin as the Grantor, and Zipkin testified he created the trust. Consequently, we determine that Zipkin is a settlor as that term is used. In so finding, we also note that the restatement document lists Zipkin as the Trustee, and that Article II states that "[t]he trust estate shall be paid to the sole beneficiary, Lewis A. Zipkin, or his estate representative." Thus, not only was Zipkin the creator of the trust, Zipkin was also the sole trustee in charge of the assets and the trust's sole beneficiary.[2]

{¶ 27} Here, having determined, based upon the plain reading of the restatement document, as well as Zipkin's own testimony that the instrument represented was a revocable trust and that Zipkin was the settlor, we conclude the plain reading of R.C. 5805.06 allows creditors to reach the assets of the trust.

{¶ 28} Based on this determination, we now turn to the setoff language contained in the 2012 Guaranty, with particular interest in the following sentence:

---

[2] The trial court's opinion, on page 9, stated that Zipkin testified as to the formation and terms of the 1974 Trust and its settlors, his capacity as Trustee of the 1974 Trust, that the Trust Account held the property of the 1974 Trust, and that his daughter and grandchildren were beneficiaries. However, the restatement of the trust agreement references a 1975 trust, which Zipkin testified he believed was created in 1974. The restatement of the trust agreement lists Zipkin as the sole beneficiary.

"However, this does not include any IRA or Keough accounts, or any trust accounts for which setoff would be prohibited by law."

{¶ 29} A plain reading of the setoff provision, as it pertains to trusts, only exempts "any trust for which setoff would be prohibited by law." For example, a spendthrift trust, whose provisions are enforceable and prevent creditors from attaching any payments due a beneficiary, would be prohibited by law to the setoff. *Seaway Acceptance Corp. v. Ligtvoet*, 8th Dist. Cuyahoga No. 87970, 2007-Ohio-405, ¶ 19, citing *Bank One Trust Co., N.A.*, 62 Ohio St.3d 39, 577 N.E.2d 1077, (1991).

{¶ 30} The official comment to R.C. 5805.06(A)(1) states the "well accepted conclusion, that a revocable trust is subject to the claims of the settlor's creditors while the settlor is living." *Watterson v. Burnard*, 6th Dist. Lucas No. L-12-1012, 2013-Ohio-316, ¶ 22-23, citing *Sowers v. Luginbill*, 175 Ohio App.3d 745, 2008-Ohio-1486, 889 N.E.2d 172 (3d Dist.).

{¶ 31} Here, it is undisputed that the instrument that the restatement document represents was a revocable trust. As such, whether the instrument was created in 1974 or 1975, whether the instrument was lost or destroyed, the instrument was not the type of trust for which a setoff was prohibited by law. Consequently, FirstMerit had statutory authority to set off the account under the 2012 Guaranty.

{¶ 32} Moreover, we are not persuaded by the argument that the trust was not a guarantor of the loan. The overarching consideration, in this case, is that Zipkin is the settlor and grantor, trustee, and the sole beneficiary of the trust. For

example, if he were only the trustee, R.C. 5805.07 would be implicated. R.C. 5805.07 provides that trust property is not subject to the personal obligations of the trustee, even if the trustee becomes insolvent or bankrupt.

{¶ 33} In this case, Zipkin is not only the trustee, but also the settlor and grantor, as well as the trust's sole beneficiary. Under the terms of the trust, and his own testimony, Zipkin had total control over decisions concerning the trust and about access to the property or funds of the trust. Having unfettered control over the instrument that ostensibly owned the bank account that Zipkin contends was improperly setoff, Zipkin's personal guaranty was sufficient.

{¶ 34} Finally, the official comment to R.C. 5805.06(A)(2) states that the statute was intended to prevent a settlor who, like here, is also a trust beneficiary from using the trust as a "shield" against his or her creditors. *Sowers*, 175 Ohio App.3d 745, 2008-Ohio-7486, 889 N.E.2d 172, at ¶ 42.

{¶ 35} Based on the foregoing discussion, we conclude that R.C. 5805.06 was the statute applicable to the instant matter. In so doing, we find that the account, at issue, was not of the type where a setoff was prohibited by law. As such, FirstMerit did not act improperly when it set off the account in the name of the Revocable Trust.

{¶ 36} Accordingly, we sustain FirstMerit's first assigned error and order that the trial court enter judgment in favor of FirstMerit.

**{¶ 37}** In the second assigned error, FirstMerit argues that the trial court erred by finding that the terms of the guaranty were breached when the bank set off the account of the Revocable Trust.

**{¶ 38}** In our resolution of the first assigned error, we concluded that R.C. 5805.06 allowed FirstMerit to properly set off the account at issue, and that the Revocable Trust was not one where a setoff was prohibited by law. Given our conclusion, we limit our discussion, except to say that FirstMerit's actions would not constitute a breach of the 2012 Guaranty because a claim for breach of contract requires plaintiff to prove: 1) the existence of a contract; 2) performance by the plaintiff; 3) breach by the defendant; and 4) resulting damages to the plaintiff. *Garfield Estates, L.L.C. v. Whittington*, 8th Dist. Cuyahoga No. 109654, 2021-Ohio-211, ¶ 20. *See, e.g., FedEx Corp. Servs. v. Brandes Internatl.* Co., 8th Dist. Cuyahoga No. 108309, 2020-Ohio-3449, ¶ 16; *Osborn Eng. Co. v. K/B Fund IV Cleveland, L.L.C.*, 8th Dist. Cuyahoga No. 95157, 2011-Ohio-348, ¶ 10.

**{¶ 39}** Under the circumstances, where the statute allows the setoff at issue, Zipkin is unable to prove that FirstMerit breached the terms of the 2012 Guaranty.

**{¶ 40}** Accordingly, we sustain FirstMerit's second assigned error.

**{¶ 41}** In the third assigned error, FirstMerit argues that the trial court erred by finding that the Revocable Trust had standing to file the lawsuit as an intended third party.

**{¶ 42}** "Standing" is defined as "[a] party's right to make a legal seek judicial enforcement of a duty or right." claim or *Torrance v. Rom*, 8th Dist. Cuyahoga No.

2020-Ohio-3971, ¶ 23, citing *Ohio Pyro, Inc. v. Ohio Dept. of Commerce*, 115 Ohio St.3d 375, 2007-Ohio-5024, 875 N.E.2d 550, ¶ 27, citing *Black's Law Dictionary* 1442 (8th Ed.2004). A party must establish standing to sue before a court can consider the merits of a legal claim. *Id.*, citing *Ohio Contrs. Assn. v. Bicking*, 71 Ohio St.3d 318, 320, 643 N.E.2d 1088 (1994). "To have standing, a party must have a personal stake in the outcome of a legal controversy with an adversary." *Kincaid v. Erie Ins. Co.*, 128 Ohio St.3d 322, 2010-Ohio-6036, 944 N.E.2d 207, ¶ 9, citing *Pyro* at ¶ 27.

{¶ 43} For a third-party to be an intended beneficiary under a contract in Ohio, the evidence must demonstrate that the contract was intended to directly benefit that party. *Meinert Plumbing v. Warner Indus.*, 8th Dist. Cuyahoga No. 104817, 2017-Ohio-8863, ¶ 54. "Generally, the parties' intention to benefit a third-party will be found in the language of the agreement." *Id.*, citing *Huff v. FirstEnergy Corp.*, 130 Ohio St.3d 196, 2011-Ohio-5083, 957 N.E.2d 3, ¶ 12, citing *Johnson v. U.S. Title Agency, Inc.*, 2017-Ohio-2852, 91 N.E.3d 76, ¶ 59 (8th Dist.).

{¶ 44} Although the Revocable Trust, out of necessity, has consumed the lion's share of our discussion thus far, there is no evidence in the record that signals any intention by either Zipkin or FirstMerit to benefit the Revocable Trust. Instead, it is undisputed that the agreement forged was for the benefit of Coventry Salad. As

such, Zipkin as the Trustee of the Revocable Trust had no standing as an intended third-party beneficiary.[3]

{¶ 45} Accordingly, we sustain FirstMerit's third assigned error.

{¶ 46} In Zipkin's first cross-assignment of error, he argues the trial court erred when it concluded he failed to prove a breach of the covenant of good faith and fair dealing.

{¶ 47} Parties to a contract are bound by an inherent duty of good faith and fair dealing. *Frebes v. Am. Family Ins. Co.*, 8th Dist. Cuyahoga No. 109117, 2020-Ohio-4750, ¶ 19, citing *Stancik v. Deutsche Natl. Bank*, 8th Dist. Cuyahoga No. 102019, 2015-Ohio-2517, ¶ 46, citing *Ireton v. JTD Realty Invests., L.L.C.*, 12th Dist. Clermont No. CA2010-04-023, 2011-Ohio-670, ¶ 51.

{¶ 48} Within this cross-assignment of error, Zipkin argues FirstMerit breached the duty of good faith and fair dealing by failing to convert the loan to installment payments and by setting off the account in the name of the Revocable Trust. Having concluded that the setoff was proper, we will limit our discussion to FirstMerit's alleged failure to convert the loan to an installment loan.

{¶ 49} At trial, Zipkin testified that he had several communications with FirstMerit about converting the balloon payment to installment payments and offered letters he sent to the bank prior to balloon payment maturing. However, the

---

[3] In *Goralsky v. Taylor*, 59 Ohio St.3d 197, 198, 571 N.E.2d 720 (1991). The Ohio Supreme Court stated, "In a trust, the trustee (and not the beneficiary) holds legal title to the trust corpus." *Bd. of Edn. of the Columbus City School Dist. v. Wilkins*, 106 Ohio St.3d 200, 2005-Ohio-4556, 833 N.E.2d 726, ¶ 11.

trial court stated on page 9 of the opinion that none of the correspondences indicate that the bank promised to convert the balloon payment into installments. After our independent review, we are in accord with the trial court's determination.

{¶ 50} In any event, the integration clause of the 2012 Guaranty, through the application of the parol evidence rule, acts as a bar to any testimony concerning representations made prior to written agreement. The parol evidence rule is a rule of substantive law that prohibits a party who has entered into a written contract from contradicting the terms of the contract with evidence of alleged or actual agreements. *Trustar Funding, L.L.C. v. Harper*, 8th Dist. Cuyahoga No. 105837, 2018-Ohio-495, ¶ 22, citing *Ed Schory & Sons, Inc. v. Francis*, 75 Ohio St.3d 433, 440, 662 N.E.2d 1074 (1996).

{¶ 51} In the instant case, the 2012 Guaranty's integration clause states in pertinent part that "the Guaranty fully reflects Guarantor's intentions and parol evidence is not required to interpret the terms of this Guaranty." Thus, like here,

> [w]hen two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

*Id.*, quoting 3 Corbin, *Corbin on Contracts*, Section 573, at 357 (1960).

{¶ 52} Based on the foregoing, we conclude Zipkin has failed to establish that FirstMerit breached its inherent duty of good faith and fair dealing. Thus, the trial court did not err in its determination.

{¶ 53} Accordingly, we overrule the first cross-assignment of error.

{¶ 54} In the second cross-assignment of error, Zipkin argues that the trial court erred when it declined to find that FirstMerit had wrongfully converted the monies in the trust account. In this regard, the trial court stated that it declined to determine Zipkin's complaint for conversion because it was moot. The trial court determined, based on it finding that Zipkin had proved the breach of contract claim, the conversion claim would not provide additional relief.

{¶ 55} Here, having concluded that FirstMerit acted properly when it set off the account in the name of the Revocable Trust, Zipkin's conversion claim fails because there was no breach of contract. Conversion is the wrongful control or exercise of dominion over the property belonging to another consistent with or in denial of the rights of the owner. *Stamatopoulos v. All Seasons Contr., Inc.*, 8th Dist. Cuyahoga Nos. 107783 and 107788, 2020-Ohio-566, ¶ 47, citing *Tabar v. Charlie's Towing Serv., Inc.*, 97 Ohio App.3d 423, 427-428, 646 N.E.2d 1132 (8th Dist.1994), citing *Bench Billboard Co. v. Columbus*, 63 Ohio App.3d 421, 579 N.E.2d 240 (10th Dist.1989).

{¶ 56} Based on the foregoing, where the statute allows the setoff at issue, FirstMerit did not engage in the wrongful control or exercise over Zipkin's property.

{¶ 57} Accordingly, we overrule the second cross-assignment of error.

{¶ 58} In the third cross-assignment of error, Zipkin argues that the trial court erred when it found that he failed to prove the claim of breach of contract. Having concluded that FirstMerit acted properly in setting off the account, we summarily overrule the third cross-assignment of error.

{¶ 59} In the fourth cross-assignment of error, Zipkin argues that the trial court erred when it determined that he failed to prove his claim of promissory estoppel. Zipkin's claim herein was the basis for his first cross-assignment of error, specifically that FirstMerit failed to convert the balloon payment to installments. There, in our resolution, we agreed with the trial court that there was no evidence presented that established that the bank made this promise.

{¶ 60} In addition, we concluded that the integration clause of the 2012 Guaranty precluded parol evidence and acted as a bar to any testimony concerning representations made prior to the written agreement. Further, the existence of an express contract, as here, precludes a claim of an implied contract or promissory estoppel. *Pagano v. Case W. Res. Univ.*, 8th Dist. Cuyahoga No. 108936, 2021-Ohio-59, ¶ 78, citing *Manno v. St. Felicitas Elementary School*, 161 Ohio App. 3d 715, 2005-Ohio-3132, 831 N.E.2d 1071, ¶ 31 (8th Dist.), citing *Cuyahoga Cty. Hosps. v. Price*, 64 Ohio App.3d 410, 416, 581 N.E.2d 1125 (8th Dist.1989), and *Gallant v. Toledo Pub. Schools*, 84 Ohio App.3d 378, 616 N.E.2d 1156 (6th Dist.1992).

{¶ 61} Accordingly, we overrule the fourth cross-assignment of error.

{¶ 62} Judgment is affirmed in part, reversed in part, and remanded. The trial court is instructed to enter judgment in favor of FirstMerit on Zipkin's breach of contract claim.

It is ordered that appellant/cross-appellee recover from appellees/cross-appellants costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EMANUELLA GROVES, JUDGE

SEAN C. GALLAGHER, P.J., CONCURS;
MARY EILEEN KILBANE, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE OPINION

MARY EILEEN KILBANE, J., CONCURRING IN PART AND DISSENTING IN PART:

{¶ 63} I respectfully concur in part and dissent in part with the majority opinion. I disagree with the majority's conclusion that FirstMerit acted properly when it set off the account in the name of the Revocable Trust and corresponding decision to sustain FirstMerit's first assignment of error. I would find that FirstMerit breached the 2012 Guaranty when it purportedly exercised its right of setoff and accessed funds from a trust account despite the undisputed fact that the trust was not a guarantor of the underlying loan. I would find that the setoff was prohibited by law and improperly executed, without providing Zipkin proper timely notice of such setoff.

{¶ 64} It is undisputed that the trust account was not a guarantor of the loan. Nevertheless, the effect of the majority opinion is that FirstMerit had the right to unilaterally take funds from the trust without notice or legal process. I recognize

that it is not the function of this court to create an exemption from a bank's extrajudicial right of setoff where none is found in the applicable statutes. However, I am troubled by the apparently limitless authority of a financial institution to not only access funds in a trust account to satisfy an outstanding loan, but to do so without providing any notice or even attempting to follow a particular process or procedure. The bank's own witness was unable to testify as to who told her to access the trust account funds and was unable to answer basic questions about banking procedures or explain the difference between a setoff and attachment.

{¶ 65} The 2012 Guaranty permitted FirstMerit to exercise its right to set off, but this right explicitly excluded certain accounts, including "any trust accounts for which setoff would be prohibited by law." I agree with the trial court that the evidence here failed to show that the setoff of the trust account was legally permissible, as required by the 2012 guaranty. Therefore, I believe that the setoff constituted a breach of contract, and I would sustain Zipkin's first cross-assignment of error and affirm the decision of the trial court.

{¶ 66} I concur with the majority opinion's disposition of the remaining assignments of error and cross-assignments of error. For these reasons, I respectfully concur in part and dissent in part.